EDWARD S. DELADSON *vs.* GEORGE W. CRAWFORD, TRUSTEE.

MARY F. CARTWRIGHT ET AL. *vs.* GEORGE W. CRAWFORD, TRUSTEE.

Third Judicial District, New Haven, January Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, JS.

The jurisdiction of courts of probate over testamentary trusts is very limited, exclusively statutory, and largely of recent origin.

In settling the accounts of testamentary trustees under express statutory authority, probate courts have only such implied powers as are necessary to the exercise of the jurisdiction so conferred.

A court of probate may construe a testamentary trust so far as may be necessary to enforce its execution, but cannot determine its validity or whether it should be terminated, inasmuch as such authority is not among its express powers.

The right to the immediate use or enjoyment of property bequeathed may be, and frequently is, postponed by interposing a temporary trust during which the income of the property is payable to another; and there is no rule of law or public policy, in this State at least, which prevents our courts from giving effect to a similar testamentary provision where the legatee of income and of principal happen to be one and the same person; all that is essential in such a case is that the trust period should not be unreasonable.

A testator may have excellent reasons for postponing a legatee's enjoyment of the principal of a fund for several years, of which the court has no knowledge, and the validity of the conditions imposed by him must depend, not upon some motive rightly or wrongly

attributed to him by the court, but upon their inherent reasonableness viewed from a legal standpoint.

In the present case a testator gave $1,500 in trust, the income of which was to be paid to A· for ten years and upon its termination the principal also. *Held* that the condition or limitation of ten years imposed by the testator was not illegal, unreasonable, nor in violation of any rule of public policy recognized in this State.

A testamentary trust which is a valid exercise of the testator's power of imposing conditions on the enjoyment of his bounty, is not a dry trust in the sense that the beneficiary may demand a conveyance from the trustee. In such cases the trustee has the right and duty of holding the principal and paying over the income according to the terms of the trust.

Argued January 21st—decided April 16th, 1919.

APPEAL from orders and decrees of the Court of Probate of the district of New Haven approving the account of the defendant, a testamentary trustee, and refusing to require him to turn over to the plaintiff the balance of the funds in the trustee's hands, taken to and reserved by the Superior Court in New Haven County, *Curtis*, *J.*, upon an agreed statement of facts, for the advice of this court. *Affirmance of probate decree advised.*

Another case—Mary F. Cartwright *et al.* v. George W. Crawford, Trustee—identical in all material respects with this case,—was reserved and argued with it.

These are two appeals from decrees of probate dated November 20th, 1918, approving and allowing two separate accounts presented by George W. Crawford as trustee of two separate trusts created by the will of Ella DeLadson of New Haven, who died in 1916. The two appeals were tried together in the Superior Court and argued together in this court, and present identical questions of law. The clauses of the will creating these trusts are as follows:—

"11. I give, devise and bequeath to William F. Alcorn of New Haven, Connecticut, $1,500 to hold the same in trust, however, for the term of ten years from

the date of my death, and to pay the income thereof, to my niece, Mary Scott, also known as Mary Cartwright now or formerly of 143 W. 132 Street, New York City, and at the expiration of said ten years, to pay over to said Mary Scott, also known as Mary Cartwright, the said sum of $1,500."

"15. All the rest, and residue of my estate, both real and personal, of whatever nature and description and wheresoever located, including all mortgages owned by me, I give, devise and bequeath to William F. Alcorn of New Haven, Connecticut, to hold the same in trust, however, for a period of ten years, and to pay the income thereof to my husband, Edward S. DeLadson, and at the expiration of said period of ten years to turn over to my said husband, all said rest and residue of my estate then remaining in said trustee's hands."

On June 24th, 1918, Mr. Alcorn was removed as trustee on account of his absence in the military service of the United States in France, and the present trustee was appointed and qualified in his place. The estate was settled, and on November 15th, 1918, the trustee presented his first accounts under the trusts in question showing in each case that he had on hand the principal of the trust fund, intact save for the premium upon the trustee's bond. Each of these appeals rests on the same ground: that the decree allowing and approving the trustee's account is erroneous because the appellant is by the terms of the will the sole and absolute owner of the fund; because the trust attempted to be created is a dry or naked trust; because the attempted trust constitutes an illegal and invalid restriction upon the appellant's power of alienation of his property; and because appellant is entitled to an order directing the trustee to turn over all the principal and interest of the trust funds, less necessary expenses, to the appellant.

*Charles E. Clark,* for the appellants (plaintiffs).

*George W. Crawford,* for the appellee (defendant).

BEACH, J. Although in form appeals from decrees allowing the accounts of the trustee, these appeals are in substance applications to have the trusts terminated, and the first question which suggests itself, is whether the Court of Probate, or the Superior Court sitting as a probate court of appeals, has jurisdiction to terminate testamentary trusts which by the terms of the will have still ten years to run. The jurisdiction of probate courts over testamentary trusts is very limited, exclusively statutory, and largely of recent origin. The history of the statutes on this subject down to 1877 may be found in *Prindle* v. *Holcomb,* 45 Conn. 111, 121. Since then, by Chapter 36 of the Public Acts of 1881, probate courts were given power to call testamentary trustees to account and to make orders necessary and proper to secure the due enforcement of such trusts. This authority apparently included final as well as intermediate accounts, for it makes no distinction between them. None the less, the revised probate law of 1885 mentions only annual accounts, and for that reason the jurisdiction remained limited to the settlement of annual accounts of testamentary trustees until it was extended by Chapter 125 of the Public Acts of 1911, now § 5045 of the General Statutes, to final accounts also. The express authority to settle accounts of testamentary trustees and to make orders necessary and proper for the due execution of such trusts, carries with it implied power to do what is necessary to the exercise of the jurisdiction expressly conferred. *Chamberlin's Appeal,* 70 Conn. 363, 378, 39 Atl. 734. Beyond that the probate jurisdiction over testamentary trusts does not go. A probate court may construe such

a trust so far as is necessary to enforce the execution of it, but it may not construe a trust to ascertain whether it is void or whether it should be terminated, for it has no express power to declare testamentary trusts void or to terminate them. Possibly a trust may be so hopelessly illegal or unintelligible as to be incapable of enforcement; but if any reasonable basis of fact or law exists for a claim, made in good faith, that the trust is valid, the duty of the Court of Probate is to exercise its limited statutory authority of enforcing the execution of the trust, and leave the contestant to pursue his remedy in a court of chancery. *Chamberlin's Appeal*, 70 Conn. 363, 379, 39 Atl. 734. In this case neither the Court of Probate, nor the Superior Court as a probate court of appeal, had jurisdiction to disallow these accounts on the ground that the trusts were invalid; and for that reason alone we should be compelled to advise the Superior Court to affirm the decrees of probate.

In the interest of the parties and to avoid further litigation on the subject, we also discuss the questions argued before us. The rule relied on by appellants is stated in Gray on Perpetuities (3d Ed.) § 120. In substance it is that when a person is entitled absolutely to property, a provision postponing its transfer or payment to him is void. That if there is a gift over in case the *cestui que trust* dies before the trust terminates, the trustee retains the property for the possible benefit of the substitutionary donee, but to postpone an absolute gift to A by interposing a trust to pay the income to A for a term of years, is void; "in pursuance of the general doctrine that it is against public policy to restrain a man in the use or disposition of property in which no one but himself has any interest."

It is not easy to find a satisfactory legal basis for this rule in the form in which Professor Gray states it.

Lord Eldon's statement of the rule in *Brandon* v. *Robinson*, 18 Ves. Jr. 429, 433, that "if property is given to a man for his life, the donor cannot take away the incidents of a life estate," is self-explanatory; although the rule is not without exceptions in this State. *Clark* v. *Baker*, 91 Conn. 663, 101 Atl. 9, and cases cited on page 666. Most of the English cases to which we have been referred, including *Gosling* v. *Gosling*, Johns. Ch. 265, which was especially relied on, exemplify the simpler rule that a testator having once made an absolute gift cannot attach to it repugnant conditions subsequent. When, however, the enjoyment of the principal is given upon the condition precedent of an interposed temporary trust for the payment of income only, the assumption that the donee may disregard the condition and demand an immediate transfer of the legal title, requires explanation.

The English cases do not supply any satisfactory explanation. The present English rule, that a *cestui que trust* may put an end to an accumulation which is exclusively for his benefit, was first actually applied in *Saunders* v. *Vautier*, 4 Beav. 115, although the opinion in that case ignores the intermediate trust and disposes of the question, very briefly, as if the gift had been made directly to the legatee, and then the executor had, nevertheless, been directed to withhold the principal and income until the legatee reached the age of twenty-four years. About fifty years later the same question came for the first time to the House of Lords in *Wharton* v. *Masterman*, L. R. (1895) App. Cas. 186; and Lord Herschell said (p. 193): "The point seems, in the first instance, to have been rather assumed than decided. It was apparently regarded as a necessary consequence of the conclusion that a gift had vested, that the enjoyment of it must be immediate on the beneficiary becoming *sui juris*, and could not be post-

poned . . . unless the testator had, made some other destination of the income during the intervening period. It is needless to inquire whether the courts might have given effect to the intention of the testator in such cases to postpone the enjoyment of his bounty to a time fixed by himself subsequent to the attainment by the objects of his bounty of their majority. The doctrine has been so long settled and so often recognised that it would not be proper now to question it."

If this authoritative statement of its origin be accepted, the rule in *Saunders* v. *Vautier* and *Wharton* v. *Masterman*, is not based either on public policy or reasoned decision. It is merely a rule which, by repetition, has become a rule of property, but was in the first instance based upon the hasty assumption that the enjoyment of a gift vested in interest could not be postponed at the will of the testator, unless for the benefit of another donee.

In this country the rule has been more or less widely accepted on the authority of the English cases, without much independent examination of the supposed legal necessity for adopting it. In one or more States it is said that the intervening trust for accumulation or payment of income is defeated by the statute of uses, and in others, including Pennsylvania, that the intervening trust is objectionable because it violates the rule of public policy forbidding restraint on the use or alienation of absolute estates. It is characteristic of the lack of any convincing reason for the doctrine of *Saunders* v. *Vautier*, that "the mother of spendthrift trusts" should resort in support of it to a rule of public policy which applies with much greater force to the Pennsylvania form of spendthrift trusts.

In fact Professor Gray's rule of public policy has no application whatever to trusts of this kind, for they do not constitute a restraint on the disposition or

DeLadson v. Crawford.

alienation of the corpus of the fund.   The estate of the beneficiary is vested, and it may be assigned, attached, or taken on execution.   In this case the record shows that Mary F. Cartwright has sold and assigned her entire interest to Edward S. DeLadson.   The fact that the principal is withheld for ten years decreases the present value of the legacy, but it does not restrain the disposition of it by the legatee.

The other branch of the rule, which declares that it is contrary to public policy to restrain a man "in the use . . . of property in which no one but himself has any interest," cannot of course be accepted unless limited to the attempted imposition or continuance of an illegal or unreasonable restraint on the use of property.

The truth seems to be that the real and only basis of the English rule is, as Lord Herschell suggests, the unconsidered assumption that a gift vested in interest, will also vest in enjoyment whenever the donee is or becomes *sui juris*, unless there is an outstanding present or contingent beneficial interest in another person; and this notwithstanding that the testator has attempted to postpone the complete enjoyment of the gift for a term of years.   When the proposition is stated in this way, free from the supposed overpowering authority of a rule of public policy, it is seen to present, in another form, the more familiar question whether by postponing the enjoyment of the principal for a term of years, the testator has attempted to impose an unreasonable or illegal condition on the gift of his bounty.   Such conditions may seem under some circumstances to be arbitrary and unnecessary, and yet they may rest upon good reasons known to the testator and not to the court.   It is certain that the validity of the conditions cannot depend upon the motive which we may rightly or wrongly attribute to

the testator as a supposed reason for imposing them. It must depend on the inherent reasonableness or not of a given condition from a legal standpoint, and looking at it in that way the postponement of the enjoyment of the principal of a trust fund for ten years is not an unreasonable exercise of the undoubted right of the testator to impose conditions on the enjoyment of his bounty.

Nor is there any good reason for declaring such a condition to be illegal. The objections based on its supposed conflict with the rule of public policy have been examined, and the question remains whether there is any necessary legal inconsistency in a *cestui que trust* as to income, having at the same time a vested right as remainderman to the principal of the gift. There is of course no objection to this during a period of temporary incapacity, such as infancy, coverture, or insanity. And by conferring discretionary powers on the trustee a temporary disqualification from enjoying a gift which is vested in interest may be imposed on one who is *sui juris*, when the testator doubts whether he will use it wisely. We have recently upheld such a trust in *Williams* v. *Gardner*, 90 Conn. 461, 97 Atl. 854.

We think it follows that a testator may in such cases attempt to exercise his own discretion by postponing the enjoyment of the principal for a term of years, without explaining to the public his reasons for doing so. This is in accordance with the settled policy of our law of which the most recent expression is as follows: "As a general rule, a testator has the right to impose such conditions as he pleases upon a beneficiary as conditions precedent to the vesting of an estate in him, or to the enjoyment of a trust estate by him as *cestui que trust*." *Holmes* v. *Connecticut Trust & Safe Deposit Co.*, 92 Conn. 507, 514, 103 Atl. 640. Our conclusion is

that the conditions which the testatrix has imposed in this will are not unreasonable, illegal, or opposed to any rule of public policy of Connecticut.

This conclusion also disposes of the contention that the trusts ought to be set aside because they are dry trusts. In *Cone* v. *Dunham*, 59 Conn. 145, 157, 20 Atl. 311, we adopted Perry's definition of a dry or simple trust: "A simple trust is a simple conveyance of property to one upon trust for another, without further specifications or directions. In such case the law regulates the trust, and the *cestui que trust* has the right of possession and of disposing of the property, and he may call upon the trustee to execute such conveyances of the legal estate as are necessary." *Neely* v. *Phelps*, 63 Conn. 251, 29 Atl. 128, was decided in strict accord-ance with this statement of the law. The death of a substitutionary *cestui que trust* left the trustee in the position of holding the property "in trust for the benefit of the said Frances J. Thayer," without further specifications or directions, and we advised the Superior Court to decree the delivery of the property to the *cestui que trust*.

It is, however, self-evident that a testamentary trust which is a valid exercise of the testator's power of imposing conditions on the enjoyment of his bounty is not a dry trust in the sense that the *cestui que trust* may demand a conveyance from the trustee. In such cases the trustee has the right and duty of holding the principal and paying the income according to the terms of the trust. "To open the door to a present termination of the trust, the case must fall squarely within the rule which equity applies when that result is sought. The conditions which this test exacts are: that all the parties in interest unite in seeking the termination, that every reasonable ultimate purpose of the trust's creation and existence has been accomplished, and

that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result." *Ackerman* v. *Union & New Haven Trust Co.*, 90 Conn. 63, 71, 96 Atl. 149.

The Superior Court is advised in each case to affirm the decree of the Court of Probate.

In this opinion the other judges concurred.