THE BRISTOL BAPTIST CHURCH ET AL. *vs.* THE CONNECTICUT BAPTIST CONVENTION ET ALS.

First Judicial District, Hartford, January Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

Equity will not permit a valid trust to be destroyed, nor will it force a merger of the legal and equitable estates upon the donor of a trust contrary to his intent and interest.

Land was given to the Baptist Society of Bristol for the use of the Society and the Church connected therewith, for the purpose of a site for a meeting-house, parsonage and horse-sheds, the deed of gift providing that if the Church and Society embraced a doctrine contrary to that then held by the Baptist Denomination, it should be void, and title to the premises should vest in the Connecticut State Baptist Convention. At this time neither Society nor Church was incorporated, but later the Church was incorporated and took title to the realty. *Held:*—

1. That the Society having accepted the trust, took the legal title for

the purpose specified in the grant, while the beneficial interest vested in the Church and Society.

2. That a court of equity would not permit the legal and equitable title in the Church to merge, thus terminating the trust and preventing the court from ordering a sale of the property if necessary to secure the objects intended by the grantor.

The Superior Court, acting either under its general equitable powers or under the provisions of Chapter 264 of the Public Acts of 1921, amending § 6070, may order the sale of realty held by a trustee when, by reason of a change of circumstances since the creation of the trust, its execution in accordance with its terms will fail to secure the objects manifestly intended by its creator.

Such power of sale cannot be invoked where the creator of the trust has inserted in the trust an express condition of reverter upon its breach, since that must be observed and carried out; but where he has inserted only one condition as to the use of the property he has given, he thereby excludes all others, including a reverter for the benefit of his heirs.

A grant of land in trust which merely specifies its charitable purposes or uses, without provision for reverter, will not be forfeited for a breach of the trust; equity will interpose and protect and carry out the trust, at least as near as may be.

In the present case the donor's expectation that these premises would be used for worship was subordinate to his dominant purpose to maintain the doctrine of his church, in aid of which he provided that upon failure of this purpose the title should vest in the State Convention of his Church. *Held* that there was nothing in the trust to prevent the court from ordering a sale of the realty upon change of conditions making it no longer suitable for church purposes, but that the judgment should provide for the use of the avails of the sale for the trust purposes and subject to the same conditions and restrictions as the original gift.

Gifts to public charities are favored in law.

The case of *Bridgeport Public Library & Reading Room* v. *Burroughs Home*, 85 Conn. 309, distinguished.

Argued January 4th—decided April 4th, 1923.

SUIT to determine the alleged right of the plaintiffs to sell and dispose of their church premises and use the avails in the purchase of other real estate to be devoted to the same purpose, brought to and tried by the Superior Court in Hartford County, *Maltbie, J.,* upon a demurrer to the amended complaint; the court overruled the demurrer and made its decree in favor

of the plaintiffs, and the defendant Ellen F. Brockett appealed. *Error in form of decree; judgment to be rendered in accordance with this opinion.*

*William F. Henney,* for the appellant (defendant Ellen F. Brockett Judson).

*Noble E. Pierce,* for the appellees (plaintiffs).

WHEELER, C. J.　The complaint sets up these facts: On May 26th, 1879, Asahel Brockett conveyed to the Baptist Society and the Baptist Church connected with the Society and located in Bristol, certain premises by a deed which is made a part of the complaint, which recites a conveyance to the Baptist Society of certain land "for the purpose of a site for a Meeting-house and Parsonage and Horse-sheds for the use of said Society and Church"; and in the *habendum* it is provided "that when a House of Worship is erected on said land, stated services shall be held in said House and the Doctrine Preached and taught as now held and taught by the Baptist denomination of Connecticut. And it is hereby agreed and expressly understood by the Grantor and the Grantee that in case said Church and Society shall at any time embrace, hold, or practice, teach or preach Doctrine contrary to the Doctrine now held and the practices and usages of the Baptist Denomination of Connecticut as now held and practiced this Deed shall be void and of none effect power or virtue as a conveyance to said Baptist Society, and thereupon the title to the land hereinbefore described shall vest in the Connecticut Baptist State Convention . . . and thereupon the said Convention may enter by its duly authorized agent and take possession of the land hereinbefore described," etc.

　During 1879, the Church and Society built a meeting-

house and horse-sheds on this land, and have since held stated services in this house, and have not embraced, held, practiced, taught, or preached doctrine contrary to that held by the Baptist Denomination. On the      .      day of                , the Bristol Baptist Church was duly incorporated under the laws of Connecticut.

Asahel Brockett is deceased, and his sole heirs are the defendants. The Church has bought another site for its church edifice, and has authorized its trustees to sell the land with the improvements thereon, deeded to the Society for its and the Church's use. In 1879, the members of the Society lived in the section where this land is, and the church was convenient for them for the use of religious services. At the present time the larger part of the members live in a different part of the city. Since this church was built, another street has been opened on the west side of this property and this street, upon which the church fronts, is becoming a business street, and near to the church are located public garages which are operated during services. A trolley line has been built on this street, which has become a State highway for traffic between Hartford and New Britain and Waterbury and Litchfield county. All of this results in noise and dust, and diminishes the attendance at church and makes the church less attractive. The new site will better serve the members of the church, and the members believe it will greatly increase its efficiency and membership. By reason of the change in the circumstances surrounding the church, a continuance of the church in this location would fail to secure the objects manifestly intended by the grantor in this deed.

The plaintiffs claim by way of equitable relief: 1. A judgment quieting the title to these premises and determining the right of the church to sell the same,

and, if sold, whether it would revert to the heirs of Asahel Brockett or the Connecticut Baptist Convention.  2. Determining whether the church can sell, subject only to the restriction that the premises shall not be occupied for the purpose of teaching a doctrine contrary to that of the Baptist Denomination of Connecticut.  3. An order for the sale and the investment of the proceeds in the new site, or in such manner as the court may deem proper to secure the objects for which the trust was created.

The voluntary gift of land by Asahel Brockett is to the Baptist Society of Bristol for the use of the Society and the Baptist Church connected with the Society, for the purpose of a site for a meeting-house, parsonage, and horse-sheds.  The *habendum* provides that stated services shall be held in the meeting-house when erected, and the doctrine preached and taught as now held and taught by the Baptist Denomination of Connecticut.  The gift is to a religious society and for a religious use.  It is a gift to a public charity and favored in the law.  When the Society received this gift it had charge of the business of this organization, while the Church had charge of its spiritual function. The Society was an unincorporated body, held the title to its property, and administered its secular affairs. Of the relative function of the Church and the Society at this time in carrying on the religious work of the organization, we may take judicial notice.  Upon the strictest test of a trust, the Society accepted and held this land in trust for the Church and itself, for the purposes specified in the grant.  It held the legal estate while the beneficial interest vested in the Church and in itself.

Up to this point the trial court is in harmony with our view; it then holds that the subsequent incorporation of the Church and the taking over of the land

and buildings, the title to which was held by the Society, merged the legal title of the Society with the beneficial interest of the Church, and so destroyed the trust which had been created by this deed. Undoubtedly this holding resulted from the court's application of the principle that no person can be trustee and *cestui que trust* at the same time, and when the Church, upon its incorporation, took over the land and buildings of the Society, it took over the legal title of the Society and stood in its place as trustee and as *cestui que trust* by virtue of the grant.

The holding fails to consider that accepted principle of equity which preserves the legal and equitable estates separate "where the rights or interests of the parties require it," or, as we say in *Donalds* v. *Plumb,* 8 Conn. 453, "to preserve any beneficial interest of the party, to promote the purposes of justice or to effect the intent of the donor." Equity will not permit a valid trust to be destroyed. It will not force a merger upon the donor of a trust contrary to his intent and interest. This very question was determined in *Mason* v. *Rhode Island Hospital Trust Co.,* 78 Conn. 81, 85, 61 Atl. 57, where we said: "The testator has attempted in unmistakable language to create a trust for the life of the plaintiff. . . . A declaration that its purpose has now been accomplished and its existence as an active one terminated, would not only arbitrarily destroy a valid trust, but also defeat the manifest and clearly expressed intent of the testator, and create a merger of estates contrary to that intent—a result which equity does not countenance." *Boardman* v. *Larrabee,* 51 Conn. 39, 44; 1 Perry on Trusts & Trustees (6th Ed.) § 347; 2 A. L. R. 579 note. Upon due application, or if occasion arises for the need of a trustee to take the place of this Society, the court will make such appointment. The trust cannot fail for lack of

a trustee. *Losey* v. *Stanley*, 147 N. Y. 560, 42 N. E. 8; 2 Perry on Trusts & Trustees (6th Ed.) §§ 722, 731. The preservation of this trust is of supreme interest to this plaintiff, since, by reason of this relationship equity may in a proper case decree a sale of the land granted, either under general equitable powers or under the statute, * Chapter 264, Public Acts of 1921; which reiterates the equitable remedy and is substantially coextensive with it.

The intention of the grantor was to continue this trust until breached in the manner specifically named in the deed. The grantor never contemplated the destruction of the trust by a merger of the legal and equitable interests. To strip this public charity of its right to apply to equity for a sale of this property, either under general equity power or under the power of this statute, might work a serious injustice to it. It is universally true that equity never permits a merger under circumstances such as exist in this case.

The statutory remedy is general, and not special as in the statute before the court in *Bridgeport Public*

---

* Chapter 264, Public Acts of 1921.

Section 6070 of the general statutes is amended to read as follows: In all cases where real estate is held by a trustee under a trust created by deed or will, and by reason of a change of circumstances or in the condition of such real estate, since the creation of such trust, the execution thereof in exact accordance with the terms of such deed or will has or shall become impossible, or would fail to secure the objects manifestly intended by the grantor or testator in said deed or will, the superior court in the county wherein such real estate is situated may, on the complaint of the trustee or any party beneficially interested in the trust, order the sale of said real estate, or any part thereof, and the investment of the proceeds, either in other real estate or as trust funds generally may be by law invested for the benefit of the party beneficially interested in such trust, in such manner as said court may deem the most suitable to secure the object for which said trust was originally created, as nearly as may be, according to the intent of the original grantor or testator appearing in the original deed or will. All parties interested in said real estate, by reason of said trust, or as reversioners, shall be made parties to any action brought under this section.

*Library & Reading Room* v. *Burroughs Home*, 85 Conn. 309, 315, 82 Atl. 582. That was an attempted exercise of judicial power in a specific case, and for that reason declared by us to be beyond the legislative power. The general remedy of the statute under which the instant action is brought, is not open to that objection. Applied to this case, the remedy therein provided authorizes the Superior Court to order the sale of real estate held by a trustee under a trust created by a deed, when, by reason of a change of circumstances since the creation of the trust, the execution of the trust in accordance with the terms of the deed would fail to secure the objects manifestly intended by the grantor. It may exercise this power either under its general equitable power or under the remedy provided by the statute. The facts found in this case present a case for a decree of sale by the court of equity because, by reason of a change of circumstances since the creation of the trust, the execution thereof would fail to secure the objects manifestly intended by the grantor in this deed.

The grant of land in trust which merely specifies the charitable purposes or uses of the grant, without provision for reverter in case of breach, will not be forfeited upon the breach of the trust; equity will interpose and protect and carry out the trust at least as near as may be. "If the trustees of a charity abuse the trust, misemploy the charity fund, or commit a breach of the trust, the property does not revert to the heir or legal representative of the donor, unless there is an express condition of the gift that it shall revert to the donor or his heirs, in case the trust is abused." 2 Perry on Trusts (6th Ed.) § 744; *Baldwin* v. *Atwood*, 23 Conn. 367; *Woodruff* v. *Marsh*, 63 Conn. 125, 136, 26 Atl. 846. But when the trust is coupled with a condition of reverter in case of its breach, al-

though the changed conditions may have made the carrying out of the trust impracticable, equity cannot decree a sale when by the terms of the trust the donor has provided what shall be done in the event of failure of the object of his charity. The donor's provision then governs; the trust was accepted upon its faith. *Brown* v. *Meeting Street Baptist Soc.*, 9 R. I. 177; *Larkin* v. *Wikoff*, 75 N. J. Eq. 462, 477, 72 Atl. 98, 79 id. 365; *MacKenzie* v. *Trustees of the Presbytery*, 67 N. J. Eq. 652, 660, 61 Atl. 1027. The court will not be divested of its inherent power to decree a sale, unless the condition of the trust to this effect shall be clearly expressed or necessarily implied. Whether the donor has so expressed himself or not, is to be determined by ascertaining his intention from a consideration of the instrument of trust in the light of its surrounding circumstances. *Bridgeport Public Library & Reading Room* v. *Burroughs Home*, 85 Conn. 309, 315, 82 Atl. 582; *Brown* v. *Meeting Street Baptist Soc.*, *supra;* 11 Corpus Juris, p. 354, § 71.

We cite a few instances where the trust was held to have terminated by force of the condition expressed in the deed or will. In *Henderson* v. *Hunter*, 59 Pa. St. 335, the grant in the deed was to build a church for members of the Methodist Church "so long as they use it and no longer, and then to return back to the original owner." The court held that "the estate in the trustees terminated when the house ceased to be used as a place of worship," etc. In *Congregational Soc.* v. *Stark*, 34 Vt. 243, 250, the *habendum* of the deed was: "To have and to hold the premises during the time the said society or their heirs shall meet on said land for public worship, or have a meeting house standing on said land and appropriate the use of the same to the Congregational or Presbyterian public worship." Of this condition the court said: "But the

legal effect of this language clearly is, that when the grantees cease to meet on said land for public worship, and fail to have a meeting house on the land and to appropriate its use to Congregational or Presbyterian worship, then their title ceases, and the grantor or his heirs may re-enter and hold the land." *In re Estate of Douglass*, 94 Neb. 280, 143 N. W. 299, was a case for the construction of a will in which was a devise of a parsonage, with the lots upon which it was situated, to such church society so long as it was used for a parsonage. The court held this to be a donation to a public charity, vesting in the church a base fee to the lots, terminable upon an event that might or might not happen, viz: the cessation of their use as a parsonage.

The authorities are in general agreement upon the principle that where the donor or testator clearly expresses, or necessarily implies, in the condition of the gift or devise in trust, his intention to limit his gift or devise to a particular institution, or mode of application or use as to a particular piece of land, and provides for a forfeiture or reverter upon breach of such limitation, the forfeiture or reverter will take effect at the instant of the breach. *Green* v. *Old People's Home*, 269 Ill. 134, 109 N. E. 701. The power of the court to order a sale, either under its general equity power or under our statute, cannot be invoked in such a case as this, for the donor or testator has made provision "in the event of the failure of the charitable use to which he in the first instance directed that it should be devoted." *Larkin* v. *Wikoff*, 75 N. J. Eq. 462, 477, 72 Atl. 98, 79 id. 365. We cite cases arising under wills upon this point as equally applicable as those concerning deeds, for both involve the same principle.

The question at issue comes to this. Did Mr. Brockett intend to limit his grant of these premises for the

purpose of a site for a meeting-house, parsonage and horse-sheds for the use of this Society and Church, and has he provided that in case of a cessation of such use the premises should revert to Ellen F. B. Judson, the heir who contests the right of the court to order a sale? The mere grant of premises in trust for a charitable use will not prevent a court of equity from ordering a sale where a change of circumstances makes this beneficial to the purposes of the trust. In the deed before us there is nothing indicative of such an intention of the donor as would forbid such sale and compel a decree of forfeiture. The condition expressed in the *habendum* is that "in case said Church and Society shall at any time embrace, hold or practice, teach or preach Doctrine contrary to the Doctrine now held and the practices and usages of the Baptist Denomination of Connecticut as now held and practiced, this Deed shall be void and of none effect power or virtue as a conveyance to said Baptist Society." There is nothing in the complaint demurred to which suggests a departure from this doctrine, and nothing in the prayers for relief requesting the court to make an order affecting the question of adherence to this doctrine; on the contrary, prayer three is for an order of sale and the investment of the proceeds in a new site, or in such other manner as "the court may deem proper to secure the object for which said trust was originally created." The court under its general equity power, and under the remedy of the statute, is without power in ordering the sale or dealing with the proceeds, to act otherwise than to carry out the object of the trust in the manner which it may deem most suitable. The deed of grant following the *habendum,* proceeds: "And thereupon the title to" these premises "shall vest in the Connecticut Baptist State Convention." That is, the condition is that if there shall be a failure

on the part of the Church and Society in relation to this provision for the maintenance of the doctrine of the Baptist Denomination of Connecticut, the title shall vest in the Connecticut Baptist Convention. The primary purpose of the donor is to uphold the doctrine of his church. For that purpose he makes the grant and provides that "when a House of Worship is erected on said land, stated services shall be held in said House and the Doctrine Preached and taught as now held and taught by the Baptist denomination of Connecticut." His expectation that these premises will be used for worship is very plainly made subordinate to the dominant purpose of maintaining the doctrine of his church. He neither expressly nor by any sort of implication indicates his intention that these premises and these alone should be used for carrying out his purpose. Nor does he provide or attempt to provide in case of failure to use these premises for this purpose that the trust should end and the premises revert to the heirs or to anyone else. Search the grant as we may, we can find nothing in it which discloses the purpose of the donor in the event of a failure of the trust, except the provision of reverter to the Connecticut Baptist State Convention, a provision obviously intended as a means of carrying on his primary purpose in behalf of the maintenance of the doctrine of his church. The insertion of one condition by the donor limits the gift in trust to that. The donor's declaration of one condition excludes all others, and hence any condition of reverter for the benefit of the heirs. In such a trust as this, restricted to this single condition, the heirs have no interest greater than that of any other member of the community.

The judgment fails to provide that the avails of the sale shall be used for the purchase of a site or the erection of a house for public worship, and that the

site or house shall be held upon the same trust and for the same purposes and subject to the same conditions and restrictions as contained in the deed of Asahel Brockett to the Baptist Society and attached to the complaint and marked Exhibit A. It further fails to provide that in case the avails of the sale are not needed in the purchase of a site or house for public worship, they shall be held in trust and from time to time invested as trust funds may by law be invested, and the avails and funds so invested shall be held upon the same conditions and restrictions as are contained in the deed of Asahel Brockett to the Baptist Society.

There is error as to the form of the judgment, the same is set aside and the Superior Court directed to render its judgment in accordance with this opinion.

In this opinion the other judges concurred.

