RICHARD BLUMENTHAL ET AL. *v.* LYNNE MARIE BEERS WHITE ET AL.
(14692)

Landau, Schaller and Hennessy, Js.

---

[13] See part IV of this opinion.

366

Argued April 25—officially released October 1, 1996

*Janet A. Spaulding-Ruddell,* assistant attorney general, for the appellant (named plaintiff).

HENNESSY, J. The plaintiff, Attorney General Richard Blumenthal, acting in his official capacity pursuant to General Statutes § 3-125,[1] appeals from the judgment of the trial court. Blumenthal and the city of Bridgeport brought this action seeking (1) to have the court apply the equitable doctrine of deviation concerning (a) two gifts of real property made to Bridgeport by James Walker Beardsley (Beardsley) in 1878 and 1881 for the purpose of a public park and (b) a fund left to Bridgeport in 1956 by Elton G. Rogers for the purpose of developing an existing zoo on the property left by Beardsley, and (2) judgment declaring that a proposed transfer of the Beardsley property by Bridgeport does not violate the conditions subsequent in both the 1878 and 1881 deeds. The defendants in this action are the heirs of Beardsley. The trial court granted a motion to default all of the defendants for failure to appear except Lynne Marie Beers White. On appeal, Blumenthal claims that the trial court improperly (1) failed to characterize the two Beardsley gifts as charitable trusts or uses to which the equitable doctrine of deviation can be applied, (2) failed to apply the doctrine of deviation to the Beardsley gifts and the Rogers fund and (3) construed the successor language in the 1878 Beardsley deed.

The trial court found the following facts. In 1878 and 1881, Beardsley transferred land to Bridgeport for the purpose of creating a park. Bridgeport has assumed much of the financial responsibility for maintaining the park since it was created. In its memorandum of decision, the trial court stated, "Recently, Bridgeport has struggled financially, nearly to the point of bankruptcy. In an effort to preserve the park and its zoo in accord-

---

[1] General Statutes § 3-125 provides in relevant part that the attorney general "shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes." Blumenthal also asserts that in addition to his statutory authority he is acting pursuant to his common law authority to oversee gifts given for public or charitable purposes.

ance with the intent of Beardsley and to assist the city financially, the state of Connecticut and the city of Bridgeport, with the consent of the defendant, Lynne Marie Beers White, an heir of Beardsley, have submitted [a] proposal to the court for approval." The proposal[2] involves the transfer of Beardsley Park and the Beardsley Zoological Gardens from Bridgeport to the parks division of the state department of environmental protection and the Connecticut Zoological Society, Inc., a nonprofit corporation, respectively, in exchange for approximately ten million dollars that will be applied to Bridgeport's bond indebtedness. The proposal also involves the transfer of the Rogers fund to the Connecticut Zoological Society. To effectuate this plan, the plaintiffs requested that the trial court apply the equitable doctrine of deviation to the Beardsley gifts and the Rogers fund. The plaintiff also requested a declaratory judgment that the proposal does not violate conditions subsequent in the Beardsley deeds.

The 1878 deed provides in relevant part: "I James W. Beardsley . . . do give grant bargain sell and confirm unto the said City of Bridgeport [description of property] . . . [t]o have and to hold the above granted and bargained premises with the privileges and appurtenances thereof unto the said The City of Bridgeport and their successors as and for a Public Park to be designated and known as Beardsley Park with the unlimited and perpetual rights in said City to use and improve the same for that purpose. But it is hereby provided that if said City shall at any future time attempt to devote said premises or any part of the same to any other use than that of a Public Park designated as aforesaid or shall attempt to deliver or convey the same or any part thereof said City shall thereupon forfeit all right and title to said premises and the absolute title

---

[2] The parties submitted the proposal as a stipulated judgment. The stipulation is set forth in the record.

to the same shall revert in the Grantor his heirs and assigns."

The 1881 deed provides in relevant part: "I James Walker Beardsley . . . do give, grant, bargain, sell and confirm unto the said City of Bridgeport [description of property] [t]o have and to hold the above granted and bargained premises, with the privileges and appurtenances thereof unto the said grantee forever to its own proper use and behoof. . . . The above deed is given only upon the following conditions: 1st, The said tracts therein conveyed are to be forever reserved, held, improved and used by said City of Bridgeport as a public park to be called by the name of 'Beardsley Park' and for no other purpose. . . . Now therefore, if said conditions shall and each be fulfilled according to the terms hereof, then this deed shall be good and valid in law, but if the said City of Bridgeport shall fail to comply with any one of said conditions then this deed shall be void, and the title to the above described premises shall revert to said grantor and his heirs at law. And upon such breach of condition they shall be entitled to enter upon said premises and possess the same as their own estate."[3]

The trial court held that both deeds created a fee simple subject to a condition subsequent rather than a trust. It then concluded that because deviation is a trust

---

[3] The other conditions provide the following: "2nd, That upon the tracts named above, and that also conveyed to said City by said Beardsley by deed recorded in Bridgeport Land Records Vol 54 page 429 [1878 deed] the said City of Bridgeport shall expend Three Thousand Dollars ($3000) per annum during the next ten (10) years in laying out and improving the same as a public park, including a proper mapped layout for the improvement of said lands as a whole. 3rd, That in case at any time during said ten years, or during the life time of said grantor herein, he shall release to said City of Bridgeport his life use in the whole or any part of said tracts, the said City shall annually appropriate of Three Thousand Dollars, or of any larger sum which may be by said City appropriated to said Park, as the land so released bears to the whole tract herein conveyed in area."

doctrine, it could not and would not apply deviation to the deeds in question. The trial court, nevertheless, held that the part of the proposal that sought to transfer the portions of Beardsley Park to the state did not violate the conditions subsequent, reasoning that the "form or level of the political entity which held and maintained the park was of no moment to Beardsley." The trial court also held that "[t]he transfer to the Connecticut Zoological Society, Inc. stands on different footing [because the Zoological Society] is neither a political subdivision or an administrative agency of the state or of the city" and that the proposed transfer to it would violate the conditions subsequent in the deeds.

The first issue before us is whether the deeds created an equitable interest to which the equitable doctrine of deviation applies. Relying on *Winchester* v. *Cox*, 129 Conn. 106, 111–12, 26 A.2d 592 (1942), the trial court held that the Beardsley deeds did not create trusts. The trial court also distinguished the deeds in this case from the deeds in *Winchester* on the ground that the deeds in this case have a condition subsequent with a right of reentry. While a trust and a condition subsequent may be used in place of each other to achieve a similar goal, they are not exclusive of each other. 1 G. Bogert, Trusts and Trustees (2d Ed. Rev. 1984) § 35, p. 413–14. "A trustee may hold an interest on condition subsequent." Id., 414; see *Bristol Baptist Church* v. *Connecticut Baptist Convention*, 98 Conn. 677, 682, 120 A. 497 (1923); 9 G. Bogert, supra, § 420, p. 89. Accordingly, we conclude that the trial court improperly characterized the deeds in this case.

*Winchester* is, however, instructive in the determination of the proper characterization of these deeds. In *Winchester* v. *Cox*, supra, 129 Conn. 112, our Supreme Court held that "[t]o characterize the capacity in which a municipality holds land conveyed to it for carrying out one of its proper purposes as that of a trustee, while

useful in many instances in working out the rights of the parties, is not, in the absence of statute, altogether accurate, and its capacity is rather that of a quasi trustee. . . . We cannot construe the deeds involved in this action as sufficient to make the town strictly a trustee of the lands in question . . . ." (Citations omitted.) In *Winchester*, our Supreme Court held that the deed at issue created a charitable use. Id. The Supreme Court cited § 373 of the Restatement of Trusts to support its conclusion that the instrument in that case was not a trust in the strict sense, but a charitable use. Restatement (Second) of Trusts § 373 (1959) provides: "A trust for the erection or maintenance of public buildings, bridges, streets, highways, parks or other public works or for other governmental or municipal purposes is charitable." This provision of the Restatement is explained by a passage in 15 Am. Jur. 2d, Charities § 5 (1976), which states: "It is to be noted that the Restatement of Trusts [Second] treats the 'charitable trust' as a species of trust, and all such dedications of property to charitable uses or purposes are so regarded and referred to by the courts." Hence, while a charitable use is not a trust in the strict sense, it may be so regarded and treated by the courts.

Having described the interest that a charitable use creates, we must now determine whether equitable jurisdiction attaches to it. "In . . . recent times . . . the subject of charities has undergone a great deal of investigation, both in England and in the United States, and it has become definitely settled that trusts for charitable uses, or public charities, as known at the present time, are of ancient origin and were long recognized as a part of the common law, and that equitable jurisdiction attached to such trusts prior to the enactment of the Statute of Charitable Uses.[4] In other words, the conclu-

---

[4] See *Hamden* v. *Rice*, 24 Conn. 350, 355 (1856) (discussing history of charitable uses and trusts and attributing their origin to Statute of Elizabeth).

sion is that the law of charities did not derive its existence from the Statute of Charitable Uses and that there was inherent jurisdiction in the court of chancery over the subject of charities before the enactment of that statute. Accordingly, the proposition supported now by practically all the authorities in this country is that courts of equity, in various states, when they are not prohibited by statute, exercise an original inherent jurisdiction over charitable trusts and apply to them the rules of equity, together with such other rules as may be applicable under the laws of the several states, and this they do by virtue of their inherent powers, without reference to whether the Statute of Charitable Uses has been adopted in the particular state in question." 15 Am. Jur. 2d 160, Charities § 136 (1976). Accordingly, we conclude that equity attaches to the charitable uses created by the Beardsley deeds.

Next, we determine whether the equitable doctrine of deviation applies to this case in light of the trial court's findings. "The court possesses . . . [an] important power, namely, that of changing, or permitting the trustee to change, the methods of administration set forth in the trust instrument, when this is deemed necessary or highly desirable in order to enable the trustee to perform the trust." 8 G. Bogert, Trusts and Trustees (2d Ed. Rev. Repl. 1991) § 396, p. 312. "Through exercise of its deviation power the court alters or amends administrative provisions in the trust instrument but does not alter the purpose of the charitable trust or change its dispositive provisions." Id., § 396, p. 314. Deviation has been applied to preserve the "dominant purpose by modifying what is described as [a] secondary purpose, often the method or means for carrying out the dominant purpose." Id., § 396, p. 330. In *Bristol Baptist Church* v. *Connecticut Baptist Convention,* supra, 98 Conn. 688, our Supreme Court noted the importance of recognizing the dominant purpose

expressed in a charitable instrument. The court also noted that "[e]quity will not permit a valid trust to be destroyed" and a "trust cannot fail for lack of a trustee." Id., 682–83.

In this case, the primary intent of the Beardsley deeds was to create a park. A review of the deeds indicates that one of the ways that Beardsley sought to ensure that the property remained a park was to prohibit Bridgeport from transferring the property. In view of the trial court's factual finding that Bridgeport has serious financial problems that risk the preservation of the parks, a holding that preserves the deeds' secondary purpose of prohibiting Bridgeport's ability to transfer the property would destroy Beardsley's intent of maintaining the property as a park. This court, therefore, concludes that the trial court, in the exercise of its equitable powers, should have applied the doctrine of deviation in order to preserve Beardsley's primary intent of maintaining the property as a park. Accordingly, we conclude that the Beardsley deeds created an interest to which the doctrine of deviation should be applied and that the doctrine of deviation should be applied to the Beardsley deeds in accordance with the proposal of the parties.

The final issue before this court is whether the trial court improperly failed to apply the doctrine of deviation to the Rogers fund. The express purpose of the Rogers fund is "to augment, develop or increase the Zoo in the Parks of the City of Bridgeport." The provision of the will creating the fund then identified "the Zoo" as the "Zoo at Beardsley Park." The fund's only purpose would be thwarted by the transfer of the zoo without the fund because the life of the Rogers fund depends on its use as a resource for the zoo in Beardsley Park. In view of this court's holding with respect to the Beardsley deeds, we also conclude, consistent with the proposal of the parties, that the doctrine of deviation should

be applied to the Rogers fund in order to preserve its purpose of maintaining the Beardsley Zoological Park.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the named plaintiff on all counts of the complaint.

In this opinion the other judges concurred.