[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The plaintiff, the Metropolitan Museum of Art, has brought this action seeking a declaratory judgment that a charitable trust in its favor may be terminated so that it may receive the entire trust principal now, rather than waiting for the date specified by the testatrix. This case presents an issue of first impression in the law of charitable trusts: Can the Superior Court, exercising its general equity jurisdiction, dissolve a charitable testamentary trust at the request of its sole beneficiary, when the dollar amount of the trust principal exceeds the amount set out in Connecticut General Statutes § 45a-520 and when the dissolution is in direct contravention of the donor's intent as expressed in the language of the trust.
Facts
Article Fourth of the Last Will and Testament of Catherine Mele date April 9, 1991 establishes a charitable trust of the residuary estate for the benefit of the Metropolitan Museum of Art of New York ("Metropolitan"):
I give, bequeath, and devise all my residuary estate, being all CT Page 4920 property, real or personal, wherever situated, in which I may have any interest at my death not otherwise effectively disposed of, but not including any property over which I may have a power of appointment, to THE SOCIETY FOR SAVINGS [now Bank of Boston Connecticut], of Hartford, Connecticut, as Trustee for the benefit of THE METROPOLITAN MUSEUM OF ART of New York, New York, in my memory and the memory of my brother, NICHOLAS R. MELE.
 The Trustee shall manage, invest and reinvest the trust corpus and distribute the net income of the trust at least annually to said museum for its general corporate purposes. At the end of ten years after my death the Trustee shall distribute the entire corpus to Metropolitan for its general corporate purposes.
Prior to her death Miss Mele executed two wills, one dated November 25, 1966 and the other dated April 9, 1991. She died a resident of West Hartford on January 4, 1995. Thereafter the beneficiaries of the estate under the 1966 Will challenged the validity of the 1991 Will. A settlement of that dispute was reached. As part of that settlement the Bank of Boston and Metropolitan agreed to seek the termination of this trust in Superior Court. Those parties specified in severance clauses that a decision of this court denying the request to terminate would not affect the other provisions of the settlement.
The current value of the principal of the Mele Trust is approximately $439,000. If the Trust is not dissolved, Metropolitan expects to receive an annual income of approximately $20,000 for ten years of the Trust duration.
In support of its Motion for Summary Judgment the plaintiff has offered the affidavit of Michael J, Mullin, the attorney who drafted the 1991 Will and the affidavit of Sharon H. Cott, Secretary and General Counsel for Metropolitan.
In his affidavit Attorney Mullin states that:
6. The Will was drafted in accordance with the wishes of Catherine Mele.
7. The purpose of the trust established under Article Fourth of the Will was to insure that The Metropolitan Museum of Art CT Page 4921 would remember Catherine Mele and her brother Nicholas Mele.
Attorney Cott states:
9. Upon receipt of the bequest made by Catherine Mele, her name will be included in Metropolitan's Annual Report and the name of Nicholas Mele will be included in that section of the Annual Report which lists gifts made in memoriam.
10. Gifts made in trust do not receive any greater recognition by Metropolitan than outright bequests made to Metropolitan.
The position of Metropolitan is, essentially, as follows. The purpose of the Trust was to ensure that Metropolitan would remember Miss Mele and her brother. Metropolitan will remember them to the same degree regardless of whether it receives the income of the Trust for ten years and then receives the principal, as specified in the Trust, or receives the entire principal amount now. Therefore, the purpose of the Trust has been satisfied and the Trust should be terminated.
The parties agree that there are no material facts at issue, and, therefore, that summary judgment should issue in the case. However, they disagree as to whether the judgment should or should not terminate the Trust. The Attorney General is opposing the termination of the Trust in his role as the representative of the public interest in protecting charitable gifts and devises. That role is mandated by statute, Connecticut General Statutes § 3-125, and common law. New York EastAnnual Conference v. Seymour, 151 Conn. 517, 521,199 A.2d 701 (1964). The Attorney General is a necessary party in any litigation involving a charitable trust or gift. Copp v. Barnum,160 Conn. 557, 558, 276 A.2d 893 (1971); Lockwood v. Killian,172 Conn. 496, 505, 375 A.2d 998 (1977), appeal after remand 179 Conn. 62 (1977).
Discussion of Law and Ruling
The Statute of Charitable Trusts, Connecticut General Statutes § 45a-514, provides:
 Any charitable trust or use created in writing or by deed by any resident of the state, or any public and charitable CT Page 4922 trust or use for aiding and assisting any person or persons to be selected by the trustees of such trust or use to acquire education, shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use.
The Statute of Charitable Uses, Connecticut General Statutes § 47-2, provides:
 All estates granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for the preservation, care and maintenance of any cemetery, cemetery lot or monuments thereon, or for any other public and charitable use, shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever.
Charitable trusts have always been construed in a manner that preserves and upholds the trust and gives effect to the donor's express intent as set out in the language of the gift instrument.See, Yale College's Appeal from Probate, 67 Conn. 237, 242-243,34 A. 1036 (1896); Hoyt v. Bliss, 93 Conn. 344, 350,105 A. 699 (1919); Healy v. Loomis Institute, 102 Conn. 410, 417,128 A. 774 (1925); Cheshire Bank Trust Co. v. Doolittle,113 Conn. 231, 232, 155 A. 82 (1931).
In Yale College's Appeal from Probate, supra, the Court stated:
 The intent to devote the whole residue to charitable purposes is expressed absolutely; the intent to devote a portion to any of the specific purposes described, is expressed contingently on the acceptance of the trust by the trustee selected for that purpose. It is the duty of the court to give effect to such intention; because it is the plainly expressed will of the testator, and because gifts to charitable uses are highly favored, and may even call for a liberal construction if necessary to support such gift in accordance with the donor's intent.
In Healy v. Loomis Institute, supra, various testamentary gifts had established a school for "all persons between the ages of twelve and twenty." It was clear from the language of the gift instruments that the donors intended that the school be open to CT Page 4923 both boys and girls. After several years in which the school was open to both boys and girls, the trustees of the school closed it to girls because so few girls were attending, and the trustees determined that it was economically unwise to keep the girls' portion of the school open. The plaintiff sought an injunction to force the trustees to reopen the girls' portion of the school. The trial court denied the injunction, holding that the trustees had exercised "wise discretion" in light of the financial drain created by providing girls' schooling. The Supreme Court reversed, holding:
 Since the charter requires these trustees to maintain a girls' school as well as a boys' school, they have no power to suspend the girls' school because its limited attendance causes an excessive expenditure per pupil. If this were an adequate ground for their action, they might suspend indefinitely such department, and in the exercise of the same power they might suspend indefinitely the boys' school and conduct a school exclusively for girls. . . . Unless we are to read into the charter a provision that these trustees may suspend at their discretion the girls' department of the Institute, their power of suspension cannot be found in the charter. We cannot read such a provision into the charter. To do so would plainly defeat the purpose of the founders. The charter determines the kind of an Institute the founders were establishing, and it is the duty of these trustees, in administering the public charity committed to their keeping, to carry into execution the provisions of the charter and the will of the founders, not the Institute they themselves might have founded, but that which the founders established.
The foregoing cases demonstrate that the Courts have placed the intent of the donor over the financial wisdom of their donation. The instances in which the Courts allow deviation from the express intent of the donor are those in which the donor or testator has evidenced a dominant intent to devote his property to some charitable purpose, but due to changed circumstances, it has become impossible, impracticable, or illegal to follow the particular method he directed. In such cases the Courts of this state have applied the "equitable doctrine of approximation" or modified cy pres. See Lockwood v. Killian, 179 Conn. 62,425 A.2d 909 (1979); Ministers Benefit Board v. Meriden Trust Co.,139 Conn. 435, F 94 A.2d 917 (1953); Second EcclesiasticalSociety v. Attorney General, 133 Conn. 89, 94, 48 A.2d 266
(1946); Shannon v. Eno, 120 Conn. 77, 88, 179 A. 479 (1935). CT Page 4924 "In exercising its powers under the doctrine of approximation (cy pres), a court must seek a method or result which as nearly as possible effectuates the intent of the testator. Shannon v. Eno, supra,
89". Lockwood v. Killian, supra, at 67.
The other common law method of deviating from the express terms of a charitable trust is found in the equitable doctrine of deviation, which has been adopted by Connecticut courts. See,Blumenthal v. White, 43 Conn. App. 365, 683 A.2d 410 (1996). The equitable doctrine of deviation is stated in Section 381 of the Restatement of Trusts:
 The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust.
The only statutory provision for the termination of a charitable trust is codified at Connecticut General Statutes § 45a-520 (b).
 In any case where the current market value of the assets of a testamentary or inter vivos charitable trust is less than one hundred fifty thousand dollars, any trustee thereof, any charitable beneficiary specifically designated in the governing instrument or the attorney general may petition a court of probate for an order terminating the trust. If such a trust has been under the jurisdiction of a court of probate prior to any such petition, the petition shall be brought to the court of probate for the district which has had jurisdiction over the trust. If such a trust has not been under the jurisdiction of a court of probate prior to any such petition, the petition shall be brought to the court of probate for any district in which any such trustee resides or has a place of business. If such a trust has not been under the jurisdiction of a court of probate prior to any such petition and if there is no trustee thereof residing or having a place of business in Connecticut, the petition shall be brought to the court of probate for any district in which any charitable beneficiary of the trust has its principal office. Upon receipt of such a petition, the court shall order a hearing and cause notice thereof to be given to the attorney general, the trustees, the grantor of the trust, if living, and any charitable beneficiary of the trust specifically designated in the governing CT Page 4925 instrument. If at such a hearing the court determines that continuation of the trust is uneconomic when the costs of operating the trust, probable income and other relevant factors are considered or not in the best interest of the beneficiaries, the court may order termination of the trust and distribution of the trust assets to any charitable beneficiary specifically designated in the governing instrument or, in the event no such beneficiary exists, to such other charitable trusts or charitable entities, including any community trust or foundation, as the court may determine will fulfill the charitable purposes of the trust being so terminated.
The maximum value of trusts subject to termination under the foregoing statute has increased over the years. Initially, trusts whose value did not exceed ten thousand dollars were subject to termination. Public Act 82-155 increased the asset value level from ten to fifteen thousand dollars. Public Act 84-294 increased it to twenty thousand dollars. Public Act 86-234 raised it to sixty five thousand and Public Act 96-35 increased the asset value level to the current $150,000.
The legislative history of Public Act 86-234, which increased the maximum value of a terminable charitable trust from twenty thousand to sixty-five thousand dollars, reflects that the purpose of the statute is to provide a bright-line test, that the statute was intended to prevent termination of trusts with values in excess of the statutory maximum, and recognizes the paramount importance of following the intent of the donor. See, Proc. H.R., April 11, 1986, pp. 2869-883 and Proc. H.R., April 23, 1986 pp. 3064-372, particularly, remarks of Rep. Kezer at 2875 and 2876 and Rep. Joyce at 3067. The remarks of Rep. Frankel reflect his understanding that trusts with a value over the maximum amount provided in that statute cannot be terminated:
 I would only like to point out to the Chamber that there are many individuals who establish testamentary trusts, wherein they establish trusts of $50,000 with specific purposes, knowing that they are safe from being broken in the future because of the $20,000 bottom and perhaps they might have changed the format of their trust instrument so that it would have been far in excess of the $65,000 mark and thereby guarantee that under no circumstances could this possible termination take place.
H.R., April 23, 1986 at 3065. CT Page 4926
The Trust in the present case has an asset value of approximately $439,000. Therefore it cannot be terminated under the provisions of § 45a-520 (b). Since there are no changed circumstances in this case which have made it impossible, impracticable or illegal to follow the method of distribution to the beneficiary which is dictated by the Trust, the doctrine of approximation cannot be used to vary the terms of the Trust in the manner requested by Metropolitan. The equitable doctrine of deviation does not support such variance. Complying with the express terms of the Trust might delay Metropolitan's receipt of the Trust principal, but it certainly will not defeat or substantially impair the purpose of the Trust.
Metropolitan urges the court to look to principles applicable to the termination of private trusts. It argues that private trusts may be terminated when 1) all of the parties interested in the trust unite in seeking termination; 2) every reasonable ultimate purpose of the trust's creation and existence has been accomplished; and 3) no fair and lawful restriction imposed the testator will be nullified or disturbed by such result. Adams v. Link, 145 Conn. 634,638, 145 A.2d 755 (1958).
Metropolitan claims that all three prerequisites to the Trust's termination have been satisfied. The undersigned does not agree. The Attorney General has an interest in the Trust because it is a charitable trust. He does not agree that the Trust should be terminated. Therefore the first prerequisite to termination does not exist. More importantly, it is clear that Miss Mele imposed a lawful restriction. that is, that Metropolitan receive income for ten years before receiving the entire principal balance of the Trust. That restriction would certainly be nullified by the termination of the Trust. Therefore, the third prerequisite to termination is also lacking here.
The Courts of this state have recognized the testator's right to postpone the payment of the principal to the beneficiaries of a trust:
 We think it follows that a testator may in such cases attempt to exercise his own discretion by postponing the enjoyment of the principal for a term of years, without explaining to the public his reasons for doing so. This is in accordance with the settled policy of our law of which the most recent expression is as follows: "As a general rule, a testator has the right to impose such conditions as he pleases upon a beneficiary as conditions precedent to the vesting of an estate in him, or to CT Page 4927 the enjoyment of a trust estate by him as cestui que trust." Holmes v. Connecticut Trust Safe Deposit Co., 92 Conn. 507, 514, 103 A. 640. DeLadson v. Crawford, 93 Conn. 402, 410, 106 A. 326 (1919).
In DeLadson the will of Ella DeLadson established two testamentary trusts, one for a niece and one for a nephew, each of which set aside $1500 to be held in trust for a term of ten years. During that period, the beneficiary would receive the annual income and at the end of the ten years, the principal would pass to each. The Court held that the trust could not be terminated upon the request of the beneficiaries because "the postponement of enjoyment of the principal of a trust fund for ten years is not an unreasonable exercise of the undoubted right of the testator to impose condition on the enjoyment of his bounty." DeLadson, supra, at 409, 410.
Even if the Trust at issue were a private trust, the court would not have authority to terminate it merely because such termination would be economically advantageous to the beneficiary. Adams v.Link, supra. In Adams the testator created a trust for the benefit of two individuals for life; at the death of the survivor of them the trust was to terminate and the fund pass outright to the New York Federation for the Blind. After the death of the first life tenant, the second life tenant and the Federation entered into a compromise agreement to terminate the trust and distribute it among them. The Court did not approve the compromise agreement and stated:
 The fundamental effect of the compromise agreement, if approved by the court, would be to abolish the trust. Our rule as to the right of the beneficiaries of a testamentary trust to have it terminated has been set forth in a number of cases, including Ackerman v. Union New Haven Trust Co., 90 Conn. 63, 71, 96 A. 149; DeLadson v. Crawford, 93 Conn. 402, 411, 106 A. 326; and Hills v. Travelers Bank Trust Co., 125 Conn. 640, 648, 7 A.2d 652. The rule has also in effect been applied to the right of the beneficiaries to terminate an inter-vivos trust. Gaess v. Gaess, 132 Conn. 96, 101, 42 A.2d 796. Here a testatrix, in her will, established a trust in admittedly clear and unambiguous language; she has now died; and the trust beneficiaries and the heirs at law have joined in a plan to set aside the trust and substitute a distribution of the testatrix' estate more to their liking. Such a testamentary trust may be terminated only by a decree of a court of equity, regardless of any stipulation by all parties in interest. CT Page 4928 Peiter v. Degenring, 136 Conn. 331 336, 71 A.2d 87. Our rule as set forth in Hills v. Travelers Bank Trust Co., supra, is: Conditions precedent which should concur in order to warrant termination of a testamentary trust by judicial decree are (1) that all the parties in interest unite in seeking the termination, (2) that every reasonable ultimate purpose of the trust's creation and existence has been accomplished, and (3) that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result. "The function of the court [of equity] with reference to trusts is not to remake the trust instrument, reduce or increase the size of the gifts made therein or accord the beneficiary more advantage than the donor directed that he should enjoy, but rather to ascertain what the donor directed that the donee should receive and to secure to him the enjoyment of that interest only." Hills v. Travelers Bank Trust Co., supra; Peiter v. Degenring, supra. The underlying rationale of our rule is the protection, if reasonably possible, of any reasonable, properly expressed, testamentary desire of a decedent. 3 Scott, Trusts (2d Ed.) 337.
145 Conn. at 637-639. (Emphasis added.)
As in Adams, the testator here as established a trust in clear and unambiguous language. She could have left Metropolitan an outright bequest, but she did not choose to do so. Instead, she chose to give Metropolitan interest for a ten year period at the end of which it would receive the entire amount of the principal. An outright gift by Miss Mele would have been financially preferable to Metropolitan. However, the common law as to both public and private trusts requires this court to protect and honor the wishes of Miss Mele even if doing so does not give maximum financial benefit to Metropolitan. Moreover, Connecticut General Statutes § 45a-520(b) prohibits the termination of the Trust in question because it is a charitable trust whose principal is greater than $150,000.
Based on the foregoing, the court grants summary judgment as follows:
1. All interested persons are parties to this action;
2. The Trust restriction of Article FOURTH: residue of the will of Catherine Mele may not be terminated.
AURIGEMMA, J. CT Page 4929