## The First Congregational Society of Bridgeport *vs.* The City of Bridgeport et als.

Third Judicial District, New Haven, January Term, 1923.

Wheeler, C. J., Beach, Curtis, Burpee and Keeler, Js.

Charitable trusts, whether created by deed or will, stand upon a different and broader basis than gifts of a mere private nature, and are construed with the utmost liberality in order to carry out the charitable purposes of the donor.

The *cy pres* doctrine is now recognized in this jurisdiction as applicable to charitable trusts created by will as well as to those created by

First Congregational Soc. *v.* Bridgeport.

deed. But this doctrine or rule, that a gift for charity having become impossible of application according to the intent of the donor, shall be applied as nearly as may be according to that intent, obviously can have no existence when the donor himself declares how the gift shall be used or applied in the event of the failure of the charitable use to which he, in the first instance, directed that it should be devoted. Accordingly, if the grantor of land conveyed in trust for the use of an ecclesiastical society as the site of a church edifice in which public worship is to be maintained, prescribes that the land shall revert to his heirs or assigns if at any time it shall cease to be so used, as he did in the present case, a court of equity is powerless to order a sale of the property, even though conditions have so far changed as to render it impossible hereafter to effectuate his original and dominant intent.

Such provision for reverter is not void as an unreasonable restriction upon alienation; and the application of the *cy pres* doctrine, under such circumstances, would constitute a violation of the rights of property and contract which are protected by our Constitutions.

Should land be granted in trust for a charity and no condition of reverter be coupled with the trust, nor any provision forbidding a sale of the property, and it is moreover apparent that the dominant intent of the grantor was the establishment of the charity, and its fulfilment upon the particular tract of land was only incidental thereto,—the court may, if conditions have changed, order a sale of the land, either under its general equity powers, or under the authority conferred upon it by Chapter 264 of the Public Acts of 1921, since these powers are substantially coextensive.

Argued January 16th—decided May 19th, 1923.

Suit for authority to sell certain premises conveyed to the plaintiff or its predecessor for church purposes, and to invest the avails of such sale in other real estate or in trust funds, brought to and tried by the Superior Court in Fairfield County, *Wolfe, J.;* facts found and judgment rendered refusing a sale of the property, from which the plaintiff appealed. *No error.*

The plaintiff is an ecclesiastical society organized under the authority of the Colonial Assembly of the Colony of Connecticut at sometime prior to 1750, under the name of the "Stratfield Society," which was subsequently changed to "The First Congregational

Society of Bridgeport," and under this name duly incorporated in 1847.

On July 2d, 1805, Josiah Lacey, Salmon Hubbell and Eleanor Hubbell, acting as executors under the will of Amos Hubbell, deceased, conveyed to the warden, burgesses and freemen of the borough of Bridgeport and to their successors, a certain piece of land by a particular description "in trust for and to the use of us the said Josiah Lacey, Salmon Hubbell, Eleanor Hubbell, Richard Hubbell, Lambert Lockwood and Silas Sherman, Stephen Burroughs, Junr., Abijah Hawley, Ezekiel Hubbell, Stephen Summers, Junr., all of said Bridgeport and others associated for the purpose of erecting a House thereon until said house (now erected) shall be floored then in trust for, and to the use of the local Presbyterian Congregational Consociated Church and Society within which said described premises are situated (now the parish of Stratfield) for the purpose of holding public worship therein, so soon as the same may be rendered convenient therefor, provided said Society will and do within a reasonable time accept of said house for the purpose of holding public worship therein at least one half of the usual public exercises of religion in said Society and take all necessary steps and measures that they may legally do the same—But if said Society for an unreasonable length of time shall refuse and neglect to accept said house in such manner and for such purposes as are above stated and under the conditions aforesaid—or if having once accepted said house shall afterwards or for an unreasonable length of time neglect to comply with the aforesaid terms and conditions, or if said Society shall by any means, or in any way be dissolved, or cease as a body corporate to support the exercises of religion in such house, or in case of destruction of said house in another house to be by

said Society on the same ground erected,—then to have and to hold in trust for and to the use of all such inhabitants of the Towns of Stratford and Fairfield as may or shall from time to time associate themselves together for the purpose of maintaining public worship according to the rites, forms and discipline of the Presbyterian Churches in the United States in said house, or on said ground in another house then and there to be built in case of the destruction of the present, and if there shall be no such inhabitants of either of said towns who may associate and occupy said house or ground in the manner and for the purpose last mentioned, then to revert back to the use and behoof of the original grantors, their heirs and assigns. And furthermore we the said Richard Hubbell for myself, my heirs, executors and administrators and the said executors of the said Amos as executors aforesaid do covenant with the Warden, Burgesses and freemen and their successors that from and after the ensealing these premises that neither I the said Richard Hubbell nor the said executors or any claiming under me or them will have and claim no right, claim or demand on the above granted and bargained premises so long as the same is used for the purposes mentioned in said deed."

The consideration of this conveyance was the satisfaction of the subscription of Richard Hubbell to a subscription made prior to the death of Amos Hubbell, by himself and Richard Hubbell, in association with other persons, for the purpose of providing a new church for the parish of Stratfield. The church building upon this tract, designated as tract one, was completed about June 20th, 1808, and the trust created by the deed was duly accepted, and the plaintiff thereupon entered upon this land and has since remained in its possession under title derived from this deed. Un-

der the Congregational system of church government, the ecclesiastical society constitutes the medium of holding title to all of the property used by the church for religious purposes, and transacts all of its business. The church associated with the ecclesiastical society, except when the same is incorporated and the functions of church and society are merged, is a voluntary association of persons, existing solely for the purpose of exercising the rites and doctrines of a purely spiritual or religious nature. The term "Presbyterian," used in this deed, was at this time interchangeably used with "Congregational" to denominate churches then and now customarily known as Congregational. From the date of acceptance of the deed until the year 1916, the plaintiff maintained public worship and religious exercises in church buildings on this and on an adjoining tract of equal size purchased by it and designated as tract two, and in accordance with the requirements of this trust deed; and both tracts were required by the increase in the members of the church, in order to adequately provide facilities therefor.

In 1830 certain members seceded and formed the Second Congregational Society and erected a new church therefor at a point two city streets south of plaintiff's church. In 1916 the members of the plaintiff and the Second Congregational Society associated in a new society called the United Congregational Society of Bridgeport, and the members of the churches affiliated with these societies formed a new church called the United Congregational Church of Bridgeport, and the three ecclesiastical societies have since this date continued in existence; having a common membership, and have jointly supported public worship and the exercises of religion hitherto separately conducted by the First Congregational Society and the Second Congregational Society. The plan of con-

solidation contemplated the demolition of the buildings on plaintiff's tracts and the erection of a new church structure sufficient in size for the accommodation of the persons thus worshipping together, and in the interim maintaining public worship and church activities in the church buildings formerly occupied by the Second Congregational Society, and this the members of the United Congregational Societies have done since 1916. Upon the demolition of the plaintiff's church buildings, plans for the new church were prepared, soundings made, and a part of the fund required raised. The pendency of the war, followed by the prohibitive cost of building, and the succeeding financial depression, has continuously made impossible the commencement of the church building. The plans thus prepared and required for carrying out the various religious activities of the United Congregational Society would completely cover the entire tracts of land of plaintiff, leaving no additional land for future extension.

At the date of the deed, in 1805, the pewholders of the plaintiff were twenty-four. In 1916 the membership of the consolidated church was one thousand, which has since been increased to fifteen hundred. At the date of this action, and ever since, it has been impossible to erect on these two tracts of plaintiff, a church structure of customary architecture adapted therefor and proper for such purpose, which would be large enough to accommodate the persons worshipping in this church, and its religious and philanthropic activities.

By reason of the change of circumstances since the creation of the trust in this deed, to wit: the increase in the number of persons affiliated and worshipping in the church, the congestion and noise incident to this locality, and the increase in the use of automobiles

and the limitation in parking space therefor, the two tracts of plaintiff's land are unsuitable and inadequate for use as a location for such church, parsonage and other buildings which ought to be erected in order to properly carry on the church and its various activities, and by reason thereof the erection of a church edifice upon these tracts of land must necessarily fail to fully carry out the purpose and secure the objects manifestly intended by the grantors in this deed.

If the court possesses the power to so order, the objects intended by the grantors in this deed can best be accomplished by ordering the sale of the tract one and the investment of the proceeds either in other real estate for a church, or in trust funds for the benefit of the beneficiaries in such manner as the Superior Court may deem the most proper to secure the objects for which this trust fund was created, as near as may be, according to the intent of the grantors in the deed. The defendant, the City of Bridgeport, is the legal successor of the Warden, Burgesses and Freeman of the borough of Bridgeport, who are named in the deed as trustees of the property, but the City of Bridgeport has never assumed to act as such trustee, and its charter makes no provision for any administrative officer or officers of it to act as such.

The trial court reached the following conclusions: (a) That neither the plaintiff not its predecessors nor the defendant, the United Congregational Society, has abandoned the property described in the complaint, nor at any time has failed to carry out the terms and provisions in said trust deed contained, but has in all respects conformed thereto. (b) That title to the land described in the complaint is in the United Congregational Society as trustee, for the use and benefit of its members and of those persons of the First Congregational Society of Bridgeport, associated with it

for the maintenance and support of the exercises of religion in the City of Bridgeport. (c) That the grantees in the deed having accepted the same upon the express condition contained therein, that if they failed "as a body corporate to support the exercises of religion in such house, or in case of destruction of said house, in another house to be by said society on the same ground erected . . . then to revert back to the use and behoof of the original grantors, their heirs and assigns,"—the Superior Court, notwithstanding the facts above found, neither as a court of equity nor by virtue of the provisions of § 6070 of the General Statutes, possesses the power to modify this condition in the deed or order a sale of such land and the investment of the proceeds in other lands to be used for the same purposes. (d) A decree in accordance herewith may be entered.

*David S. Day* and *Samuel F. Beardsley*, for the appellant (plaintiff).

*James C. Shannon*, with whom was *Irving Elson*, for the appellees (defendants Polsen and Kilen).

WHEELER, C. J. The trial court adjudged the title to the land conveyed in trust to the local Presbyterian Congregational Consociated Church and Society, known as the Stratfield Society and which later became the First Congregational Society of Bridgeport, to be in The United Congregational Society as trustee for the use and benefit of its members and all of those members of the First Congregational Society associated with it for the maintenance and support of the exercises of religion in the City of Bridgeport. No appeal has been taken from this portion of the decree. It further adjudged that the relief sought by the plaintiff in its first prayer for relief be de-

nied. The relief thus sought was an order for the sale of the land so conveyed and the investment of the proceeds in other land, or as trust funds generally may be invested, for the benefit of the United Congregational Society and of the plaintiff, in such manner as the court may deem most proper to secure the object for which the trust was created. The court held that the condition expressed in the deed forbade the granting of the relief asked for.

The sole question presented upon the appeal is whether or not the condition upon which this conveyance was made in trust does prevent the court from decreeing a sale of the land conveyed, and the disposition of the proceeds in such manner as to most effectually carry out the object of this trust. This trust is for the support of the exercises of religion by a particular denomination; it is for a pious and a charitable use, and this brings it within the classes of trusts known to our law as charitable trusts. Trusts of this character concern philanthrophy and charity, and affect the welfare of individuals and of the community; as a consequence of their public nature our law treats them, whether created by deed or will, upon a different and broader basis than gifts of a mere private nature. It favors them, and construes them with the utmost liberality, in order to carry out the charitable purpose of the donor. It will "take especial care to enforce them and guard them from assault, and protect them from abuse." *Coit* v. *Comstock*, 51 Conn. 352, 377.

The jurisdiction of the courts over charitable trusts is administered not only under these liberal rules of construction, but also under the undoubted right of the court to exercise prerogative authority in dealing with a charitable gift. That authority gives to it the right to apply the *cy pres* doctrine to charitable trusts, that is, if the object of the charity cannot be accom-

plished, the funds or property may be applied to other charitable purposes, as near as may be to the original purpose of the charity. We have expressly recognized the doctrine as applicable to charitable trusts created by deed. In *White* v. *Fisk,* 22 Conn. 31, 54, we denied its applicability to charitable trusts created by will. There can be no reason for its application to deeds and not to wills. And so, in *Woodruff* v. *Marsh,* 63 Conn. 125, 136, 26 Atl. 846, we indicated our view that the application of the *cy pres* doctrine to deeds should be extended to such trusts when created by will, and in *Bridgeport Public Library & Reading Room* v. *Burroughs Home,* 85 Conn. 309, 318, 82 Atl. 582, we applied the doctrine to a charitable trust created by will.

In the recent case of the *Bristol Baptist Church* v. *Connecticut Baptist Convention,* 98 Conn. 677, 120 Atl. 497, we held that the Superior Court, as a court of equity, could, in a proper case, decree a sale of land granted in trust either under its general inherent equitable powers, or under the statute, Chapter 264 of the Public Acts of 1921, which, we held, reiterates the equitable remedy and is substantially coextensive with it; and that where the grant merely specifies the charitable purpose or use, without provision for reverter in case of breach, equity will decree a sale and carry out the trust as near as may be, where there has been a change of circumstances since the creation of the trust preventing the carrying out in whole or part the intention of the grantor. *Hodge* v. *Wellman,* 191 Iowa, 877, 882, 179 N. W. 534; *Baldwin* v. *Atwood,* 23 Conn. 367. "But when the trust is coupled with a condition of reverter in case of its breach, although the changed conditions may have made the carrying out of the trust impracticable, equity cannot decree a sale when by the terms of the trust the donor has provided what shall be done in the event of failure of the object of his

charity. The donor's provision then governs; the trust was accepted upon its faith." We further held: "The authorities are in general agreement upon the principle that where the donor or testator clearly expresses or necessarily implies, in the condition of the gift or devise in trust, his intention to limit his gift or devise to a particular institution, or mode of application or use as to a particular piece of land, and providing for a forfeiture or reverter upon breach of such limitation, the forfeiture or reverter will take effect at the instant of the breach. . . . The power of the court to order a sale, either under its general equity power or under our statute, cannot be invoked in such a case as this, for the donor or testator has made provision ' in the event of the failure of the charitable use to which he in the first instance directed that it should be devoted.' " Of the grant in the *Bristol Baptist Church* v. *Connecticut Baptist Convention, supra,* we say: "The primary purpose of the donor is to uphold the doctrine of his church. . . . His expectation that these premises will be used for worship is very plainly made subordinate to the dominant purpose of maintaining the doctrine of his church." In *Larkin* v. *Wikoff,* 75 N. J. Eq. 462, 477, 72 Atl. 98, 79 id. 365, the court supports the doctrine we have adopted, in these words: "Now, upon the authority of these cases, it is perfectly apparent that if the particular trust created by the donor is no longer capable of fulfillment owing to the changed conditions existing, the property and fund would be applied *cy pres,* were it not for the fact that the donor himself in the deed of gift has provided what shall be done with reference to 'the trust estate in the event of the failure of the object of charity which he endeavored to promote. Of course, the doctrine of *cy pres,* that is, the doctrine that a fund for charity, being impossible of application according to the intention of the donor, shall be applied, as nearly

as may be, according to his intention, can have no existence when the donor himself provides for the application of the fund in the event of the failure of the charitable use to which he in the first instance directed that it should be devoted."

Since, in the instant case, the court has found the facts essential to support a sale, its right to make such a decree depends upon whether the grantors have clearly expressed or necessarily implied in the condition of this grant their intention to limit their grant in trust to the use of this particular piece of land and provided for a reversion upon a breach of the trust. The plaintiff insists—and this we regard as its principal contention—that the dominant purpose of the grantors was the maintenance of public worship in accordance with their religious beliefs, and that the use of this particular piece of land was merely an incident to the accomplishment of this dominant purpose. If this be the proper construction of the condition of this grant, then the plaintiff was entitled to a decree of sale. For the existence of the dominant purpose is the expression of the grantors' primary intention. And if that intention be the maintenance of public worship, the intention to hold public worship upon this particular piece of land is subordinate and incidental to the primary intention of maintaining public worship or religious exercises in accordance with the religious belief of the grantors.

The principle of law upon which the plaintiff rests, and which we approve, is best stated in *Brown* v. *Meeting Street Baptist Society*, 9 R. I. 177. In that case the deed conveyed "in trust for the purpose and use of erecting thereon, a suitable building for a school house . . . and also for a Meeting House, for Divine Worship for the people of color, . . . and for no other use, but for the said people of color forever." The court held that

the charity was the dominant purpose of the grantor, not the perpetual use of the particular lot granted for this purpose, and hence the sale could be ordered if changed circumstances prevented the charity from being maintained on this lot except with impairment of the charity. The court said of this grant (p. 186): "The language of the deed shows that the grantor designed or expected that it should be used as the site whereon the proposed school-house or meeting-house should be built. . . . Indeed, the cases seem to rest upon the idea—somewhat like that which obtains in *cy pres* application of charity estates—that the primary purpose of the donor being the promotion of the charity, his incidental purpose that the particular property given shall be used for its promotion, may be disregarded, and the property sold or exchanged, if thereby the charity will be greatly benefited. If this be the true view, we think we need not hesitate to give the sanction of the court to the exchange proposed; for however evident it may be that the donor designed or expected that the granted lot should be the seat of the contemplated charity, it is still more evident, from the scope and tenor of the deed, that it was the charity itself, and not the perpetual use of the lot for its advancement, which the benevolent donor had at heart." See also *Brice* v. *All Saints Memorial Chapel*, 31 R. I. 183, 202, 76 Atl. 774.

The principles which control a court of equity in ordering a sale of land granted in trust for a charity are these. If the grant of land be in trust for a charity, and no condition of reverter be coupled with the trust, and no provision be found in the grant forbidding it, the court may, if conditions have changed, in a suitable case order a sale of the land either under its general equity power or under the statute. *Mac-Kenzie* v. *Trustees of Presbytery*, 67 N. J. Eq. 652,

660, 61 Atl. 1027. But if the trust be coupled with a condition that the estate shall revert if the trust be breached, the court is without power to order a sale even though the conditions have so far changed as to make it impossible to continue to carry out the intention of the donor. *Brown* v. *Meeting Street Baptist Society*, 9 R. I. 177, 186. Even though the grant of land in trust and for a charitable purpose contain a provision of reverter, if the use of the land granted was incident to the main purpose of the grantor,—the establishment of the charity,—the land is not of the essence of the charity, so that the court could properly order a sale if it found the land was no longer available, or less available, for the use for which the grantor had intended it. *Brown* v. *Meeting Street Baptist Society*, 9 R. I. 177, 186; *Lackland* v. *Walker*, 151 Mo. 210, 257, 52 S. W. 414.

Aside from the last point upon which it relies, we find ourselves in accord with the principles of law upon which the plaintiff rests its case. The plaintiff construes the deed as presenting as its dominant purpose, that is, as indicating the primary intention of the grantors, the establishment of this charity for pious uses, and as presenting, as an incident of the charity, its fulfillment upon this lot. We differ, not with the plaintiff's principle, but with its application. The conveyance is in trust for the Society for the purpose of erecting a house upon the land conveyed, and of holding public worship therein at least one half of the usual public exercises of religion in said Society. If the conveyance had stopped at this point, there could be no question as to the right of the court of equity to decree a sale upon the facts found, since the grant would then have merely specified the charitable purposes or uses, without provision for the continued use of the land for the purposes of the trust,

and for reverter in case of breach. The grant does not stop at this point, but recites the conditions of the grant in unmistakable terms. Confining our consideration to the condition which affects the right of the court to decree a sale, we find its recital to be: But if said Society having once accepted said house shall by any means, or in any way, "cease as a body corporate to support the exercises of religion in such house, or in case of destruction of said house in another house to be by said Society on the same ground erected,"—then to hold in trust for such inhabitants of the towns of Stratford and Fairfield as may associate together for the purpose of maintaining public worship "in said house, or on said ground in another house then and there to be built in case of the destruction of the present." We have in this recital an express provision for a reverter. We also have a recital that the exercises of religion are to be carried on "in such house," that is, in the house which is to be erected upon the land conveyed. The grantors make their purpose still plainer by providing that in case of the destruction of this house, the exercises of religion are to be carried on in another house to be erected by the Society on the same ground. This would seem to indicate that the intention of the grantors was to have this lot dedicated to the purposes of this trust.

The condition of reverter to the inhabitants of Stratford and Fairfield reiterates the purpose of the trust to the Society by providing that its holding shall be for the purpose of public worship in this house; or in case of its destruction in another house to be erected on this land. It must be conceded that the grantors intended that public worship should be held in each of these houses and upon this land. It cannot be said that these grantors did not intend that the exercises of religion should be continued

upon this land. No more can it be said that the dominant purpose was the maintenance of the exercises of religion, and the incidental purpose their maintenance upon this land, when the grantors specifically provide for a reversion in case the Society shall cease to support the exercises of religion in the house to be erected on this land, or in another to be erected on this land in case of its destruction. The particularization of this land upon which these houses of public worship should stand, forbids a construction which would make the purpose of the grantors in the use of this land subordinate to their purpose to have public worship held upon this land.

No public benefit, no increased beneficence, no advantage to religious activity, can justify a court in making over the wills or contracts of men, in the conviction that changed conditions make this, if not necessary, at least highly desirable. These grantors have, in the exercise of their right under the law, determined the conditions of their grant and provided for such a reversion as they desired. We cannot remake their grant, nor can we, by a process of construction, interpret it to mean something other than that intended by the grantors. The power of the court to decree a sale of property given by deed in trust for charity, does not exist where the grantor has provided for the disposition of the trust estate upon the breach of the trust. This deed contains a second provision of reverter which makes the intention of the grantors even plainer. If there be no such inhabitants, the recital of the condition continues, "who may associate and occupy said house or ground in the manner and for the purpose last mentioned, then to revert back to the use and behoof of the original grantors, their heirs and assigns." That is, if there be a breach of the trust, and there be no inhabitants

to occupy said house or ground, and for the purposes of the trust, the grantors provide for a reversion of the grant to themselves, their heirs and assigns. In the second reversion, as in the first, the grantors specify the use of the land conveyed for the purposes of the trust. This unvarying reiteration of the use of this land for the purposes of the trust, emphasizes the purpose of the grantors that the public worship provided for should be conducted upon this land. If the plaintiff shall not carry on the exercises of religion as specified upon this land, the inhabitants shall; if neither shall carry them on, the grant shall revert to the original grantors, their heirs and assigns. This is the expressed purpose, and this is the manifest intention of the grantors. The grantees accepted the grant containing a condition providing for a defined use of this land and a declaration of forfeiture and reversion in case of a breach of the terms of the trust, and they cannot escape its obligations.

The strong wish of any court to which this application had been made, to decree a sale, upon the facts appearing on this record, would be to grant the decree, for that would appear to be the best way to carry on the noble work which the First Congregational Society of Bridgeport is doing with such phenomenal success. The court does not act upon its mere will; it is controlled by the rules of law and knows no person. In this case its only duty is to determine what the grantors intended by their deed to the plaintiff. When it ascertains this, its judgment follows. A reading of this grant would convey to the ordinary mind that these grantors intended the reversion to take effect when the land ceased to be used for the purposes of this trust.

In the second branch of their argument counsel for the plaintiff maintain that the Superior Court, in the exercise of its inherent power and also by virtue of

this statute, has the power to decree a sale whether or not the grantors have provided in their grant that it shall revert to the grantors, their heirs or assigns, upon a breach of the trust upon which the grant was made. Their claim is that the cessation of the use of this land, provided it is brought about through a decree by the court of a sale because of a change of circumstances, does not subject the land to the provision of reverter, because the grant was made (1) subject to the power of sale which was then vested in the court; (2) that this exercise is not an unreasonable interference with the rights of property of the reversioners; and (3) that the condition in this deed, if construed as eliminating the power of sale by the court, was an unreasonable restriction upon alienation and void. The first ground we have already held to be sound. The second and third assert the incapacity of a grantor in a deed in trust for a charity to compel a reversion in case of a breach of the condition of the trust, by any form of condition limiting the use of the grant and providing for reversion in case of breach. We shall not extend this opinion by discussing this ground at length. The exercise of such a power by a court of equity would directly interfere with the right of alienation by preventing a grantor from attaching to his grant a condition for reverter in case the land granted is not used in the manner designated in the grant. We are convinced that no such power exists in any court of equity, nor can such a power be supported as a part of the prerogative power of the court, for its exercise would violate rights of property and of contract which are under the protection of our Constitutions. We find no authority which sustains this contention.

There is no error.

In this opinion the other judges concurred.