THE CONNECTICUT CHILDREN'S AID SOCIETY *v.* THE CONNECTICUT BANK AND TRUST COMPANY, SUCCESSOR TRUSTEE (ESTATE OF WINCHELL SMITH), ET AL.

KING, MURPHY, MELLITZ, SHEA and SHANNON, Js.

Argued June 9—decided July 26, 1960

*Bruce W. Manternach,* with whom was *R. Regner Arvidson,* for the plaintiff.

*J. Harold Williams,* with whom was *Robert E. Pritchard,* for the named defendant.

*Charles B. Milliken,* for the defendant The Connecticut Bank and Trust Company, Trustee (The Hartford Foundation for Public Giving).

MELLITZ, J. The plaintiff has been authorized by No. 568 of the Special Acts of 1959 (29 Spec. Laws 547) to merge into The Hartford Orphan Asylum and has brought this action for a declaratory judgment to determine whether, if it enters into such a merger, it will cease to exist within the meaning of article eleventh of the last will and testament of Winchell Smith, late of Farmington, who died in 1933. The questions propounded are (a) whether the plaintiff's existence will continue in the corporation resulting from its merger into The Hartford Orphan Asylum so that the plaintiff will continue to receive the income bequeathed to it under article eleventh of the will of Winchell Smith; and (b) whether No. 598 of the Public Acts of 1959 (General Statutes §§ 33-156a, 33-156b; see §§ 33-476 to 33-481, effective Jan. 1, 1961) and No. 568 of the Special Acts of 1959 are valid as applied to the proposed merger of the plaintiff into The Hartford Orphan Asylum with reference to the bequest to the plaintiff under article eleventh of the will of Winchell Smith.

Article eleventh of the will of Winchell Smith bequeaths the residue of his estate in trust, the net income to be disbursed to a number of organizations in varying proportions. The largest bequest, 25 per cent of the net income, is to the plaintiff, for its general purposes, in memory of the testator's mother, Mrs. Virginia T. Smith, who was one of seventeen persons who founded the plaintiff. After making six other bequests of income to other organizations, article eleventh provides that the share of any income given to any one of the named organizations which may refuse to accept the bequest or which may cease to exist shall thereafter be disbursed for the charitable uses and upon the terms and conditions contained in a resolution creating The Hartford Foundation for Public Giving.

The stipulated facts, so far as necessary for a determination of the questions presented, are as follows: The plaintiff is a nonprofit charitable corporation, without capital stock, incorporated in this state in 1896. Its articles of association state: "The purposes for which said corporation . . . is formed are the following, to-wit; to search out, assist and care for, dependent, needy and homeless children, and use its best endeavors to place such children in good homes where they will receive proper care and training to make them useful members of society: to search out, assist and care for dependent, sick and incurable children, and any class of dependent or neglected children not otherwise provided for, and to receive the contributions of those charitably disposed towards the foregoing objects of the corporation, and who may wish to contribute for the advancement of the same." The Hartford Orphan Asylum was incorporated in Connecticut in 1833. It is maintained to furnish a home for children "who

are temporarily or permanently deprived of the opportunity of living with their parents and for the general betterment of children who may, in any way, become associated with said asylum." 22 Spec. Laws 941, No. 522, § 5. In 1947, the plaintiff integrated its staff with The Hartford Orphan Asylum, and since 1950 the plaintiff and The Hartford Orphan Asylum have had identical boards of directors and have been located at Children's Village in Hartford. Together, they have been known as Children's Services of Connecticut. Today, Children's Services of Connecticut provides institutional care, if necessary, to needy children. Under the Connecticut adoption law, it acts as guardian and finds adoptive homes for a large number of children each year. These functions are the natural outgrowth of the charter purposes of the plaintiff and The Hartford Orphan Asylum. Because Children's Services of Connecticut is an unofficial name and because the plaintiff and The Hartford Orphan Asylum still have separate legal statuses, Children's Services of Connecticut must appear in court and must act legally under the name of either the plaintiff or The Hartford Orphan Asylum. The plaintiff desires to merge into The Hartford Orphan Asylum, the resulting corporation to be called Children's Services of Connecticut, Inc., and has been given authority to do so by No. 568 of the 1959 Special Acts. The act provides that the merger must occur prior to December 31, 1960. The plaintiff does not wish to enter into the merger if, in so doing, it will be deemed to "cease to exist" under the terms of the trust.

Section 33-156a of the General Statutes provides for the merger or consolidation into a single corporation of any two or more nonprofit charitable corporations without capital stock, organized under the

laws of this state for similar purposes. The corporation continuing its corporate existence in a merger, or resulting from a consolidation, is to be termed a "resulting corporation." Section 33-156b provides, in part, as follows: "(a) Except as provided in subdivision (d) of this section, the separate existence of the constituent corporations, except that of the continuing corporation in case of a merger, shall cease; . . . (d) any devise, bequest, gift or grant, contained in any will or in any other instrument, made before or after the merger or consolidation, to or for the benefit of any of the constituent corporations shall inure to the benefit of the resulting corporation. So far as is necessary for that purpose the existence of each constituent corporation shall be deemed to continue in and through the resulting corporation . . . ." Special Act No. 568, which authorizes the plaintiff to merge into The Hartford Orphan Asylum, likewise provides (§ 4) that bequests or devises which have been or shall hereafter be made to either of the corporations shall inure to the benefit of the resulting corporation, and further: "So far as is necessary for this purpose the existence of Connecticut Children's Aid Society shall be deemed to continue in and through the resulting corporation." In the proposed merger of the plaintiff into The Hartford Orphan Asylum, the latter, under the name of Children's Services of Connecticut, Inc., is to be the continuing and resulting corporation, and the plaintiff a constituent corporation.

Statutory provisions which were operative at the time of the plaintiff's incorporation in 1896 and the testator's death in 1933 expressly provided that all acts creating, or authorizing the organization of, corporations should be subject to alteration, amend-

ment and repeal at the pleasure of the General Assembly. Rev. 1888, § 1909; Rev. 1930, § 3371. Under this reservation of power, an amendment or alteration of the charter of a corporation may result from the operation of the general laws as well as from legislation addressed to the particular corporation. *Southington* v. *Southington Water Co.,* 80 Conn. 646, 651, 69 A. 1023. These provisions permit the amendment of corporate charters within a wide field, at least to the extent of such amendments as would not defeat or substantially impair the object of the grant or any rights which have vested under it. *Fair Haven & W. R. Co.* v. *New Haven,* 75 Conn. 442, 453, 53 A. 960, aff'd, 203 U.S. 379, 388, 27 S. Ct. 74, 51 L. Ed. 237. The plaintiff's articles of association were thus expressly subject to amendment or alteration at the will of the General Assembly, and it was within the competence of the General Assembly to fix and to regulate the terms of the cessation of the plaintiff's corporate existence by an amendment of its articles of association. Sections 33-156a and 33-156b and Special Act No. 568 were, in effect, amendments to the plaintiff's articles of association. *Fair Haven & W. R. Co.* v. *New Haven,* supra. By these enactments, it is expressly provided that the existence of the plaintiff is to continue in and through The Hartford Orphan Asylum in the event of a merger, so far as necessary to ensure that any bequest to the plaintiff would inure to the benefit of the resulting corporation. The separate existence of the plaintiff, in such an event, is specifically made to continue in and through The Hartford Orphan Asylum after the consummation of the merger, and the plaintiff therefore will not "cease to exist," within the meaning of article eleventh of the will, as a result of the merger.

Apart from the provisions of the statutes, however, a like conclusion is required if the intent of the testator, as disclosed by the language he employed in his will, is to be given effect. In the trust he established of his residuary estate, he disclosed, foremost, a desire to honor and perpetuate the memory of his mother by furthering the charitable endeavor which she fostered during her lifetime. He favored this particular charity with a share of the trust income larger than that given to any other. His mother had helped to establish the plaintiff "to search out, assist and care for dependent, needy and homeless children" and place them in good homes where they could "receive proper care and training to make them useful members of society." She and those associated with her were concerned with the advancement of the welfare of dependent and helpless children and the attainment by them of useful lives. This charitable endeavor with which she was identified the testator sought to further and perpetuate, in her memory, by the bequest to the plaintiff in article eleventh. Clearly, the essence of his bequest for the plaintiff's general purposes was the attainment of the objectives for which the plaintiff was organized. The language he employed does not manifest an intention to restrict the bequest to the plaintiff. For many years now, more efficiently and effectively to accomplish the plaintiff's purposes, its staff and administration have been integrated with those of The Hartford Orphan Asylum. After the merger of the two organizations, although there will be a formal cessation of the plaintiff's activities as a corporate entity, the charitable purposes which the bequest was intended to accomplish will continue without abatement. The plaintiff will not "cease to exist" in any sense contemplated by

the testator. A similar result was reached in *Bridgeport-City Trust Co.* v. *Bridgeport Hospital,* 120 Conn. 27, 179 A. 92, where the income of a trust bequeathed to a church was to be transferred into another trust if the church should "dissolve" or "abandon the purpose for which it was created." We concluded (p. 34) that the church had not dissolved within the intent of the testatrix when it merged with another church, that the testatrix had not intended the word "dissolve" in the sense of a technical dissolution but in the sense of an abandonment of purpose, and that the resulting corporation would carry on the very purposes for which the income was meant to be used and therefore was entitled to receive the income.

To both questions in the reservation we answer, "Yes."

In this opinion the other judges concurred.