NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0532n.06

No. 14-2416

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MADELEINE L. DECLERCQ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| JP MORGAN CHASE BANK, N.A. and | ) | |
| AMERICAN DIABETES ASSOCIATION, | ) | |
| | ) | OPINION |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

**Before: GILMAN, COOK, and KETHLEDGE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** This case requires us to decide what being someone's "issue" means. If one's "issue" includes all blood relatives, then Madeleine DeClercq stands to inherit about five million dollars. Michigan law, unfortunately, limits one's "issue" to lineal descendants. For this reason, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Joan Bookmyer created a trust in 1992 (the Trust). According to the Trust agreement, whatever remained of the Trust at the time of her death was to be transferred to her daughter "or any other issue." If Bookmyer had no living issue at the time of her death, then the remainder of the Trust was to be paid to the American Diabetes Association-Michigan Affiliate (ADA-MI). The ADA-MI was merged into the national American Diabetes Association (ADA) in 1998.

Bookmyer passed away on June 13, 2013 at the age of 89, predeceased by her daughter, who died on January 4, 2012. There were no other lineal descendants.

After Bookmyer's death, her cousin Donald DeClercq (Madeline DeClercq's father) probated a Will allegedly executed by Bookmyer on January 16, 2012. The Will purported to revoke the Trust agreement and distribute Bookmyer's assets—including those in the Trust—to a series of individuals, with Donald DeClercq as the residuary beneficiary. A will contest ensued, with the ADA asking the probate court to set the Will aside. That litigation was settled in May 2014. Under the settlement, Donald DeClercq received $1.1 million from Bookmyer's estate and disclaimed any interest that he might have had in the Trust. Six other individuals received specific bequests from Bookmyer's estate, and the ADA received the roughly $5 million Trust balance.

Madeline DeClercq was not a party to the litigation over the Will, nor did she receive notice of the proceedings. After the Will was probated, DeClercq filed a federal lawsuit against the ADA and JP Morgan Chase, the latter serving as the trustee of the Trust (collectively, the Appellees), arguing that she is Bookmyer's "issue" and thus entitled to the residue of the Trust. The district judge granted the Appellees' motion to dismiss DeClercq's suit for failure to state a claim upon which relief can be granted. DeClercq now appeals that decision.

## II. ANALYSIS

We review de novo a district court's grant of a motion to dismiss for failure to state a claim. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). In reviewing the decision of the lower court, we must accept all of the factual allegations in the complaint as true, although we need not accept bald legal conclusions or unwarranted factual inferences. *Id.* We may also consider documents referenced in the complaint, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 322 (2007), such as the Trust agreement and the settlement documents stemming from the ADA's challenge to the Will.

This case presents two straightforward questions of law: (1) is the word "issue," as used in the Trust agreement, limited to lineal descendants; and (2) does Bookmyer's gift to the ADA-MI fail by virtue of the ADA-MI's absorption into the national ADA? We answer "yes" and "no," respectively, for the reasons discussed below.

## A. The word "issue" is limited to lineal descendants

DeClercq argues that the word "issue" as used in the Trust agreement is ambiguous, such that she should be allowed to conduct discovery as to Bookmyer's intent when the Trust was created. At the very least, she argues, her interpretation of the Trust agreement (that she qualifies as Bookmyer's "issue" by virtue of being a blood relative) is sufficiently plausible that the district court was obligated to accept her contention for the purposes of a motion to dismiss. She is mistaken on both counts.

Courts must interpret a trust to "give effect to the settlor's intent," which is to be determined "from the trust document itself, unless there is ambiguity." *In re Theodora Nickels Herbert Trust*, 844 N.W.2d 163, 164 (Mich. Ct. App. 2013) (citing *In re Kostin*, 748 N.W.2d 583, 589 (Mich. Ct. App. 2008)). A trust agreement is ambiguous when "an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." *In re Woodworth Trust*, 492 N.W.2d 818, 819 (Mich. Ct. App. 1992). If there is no ambiguity on the face of the trust agreement, then a court need not accept extrinsic evidence in applying its terms. *In re Estate of Butterfield,* 275 N.W.2d 262, 266 (Mich. 1979) ("Where there is no ambiguity, [the settlor's] intention is to be gleaned from the four corners of the instrument . . . .").

Here, the district court determined that there was no ambiguity in the Trust agreement. The court's interpretation of the agreement was therefore legal rather than factual in nature. *See In re Estate of Bem*, 637 N.W.2d 506, 509 (Mich. Ct. App. 2001) (holding that when extrinsic evidence is not required to interpret a will, the trial court's interpretation of the instrument is not a factual finding but rather a legal conclusion). Legal assertions are not entitled to the same presumption in favor of the nonmovant as are factual allegations when a court rules on a motion to dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

The word "issue" is not "defective, obscure, or insensible" under Michigan law. One's "issue" has long been defined in Michigan as that person's lineal descendants. *In re Estate of Butterfield*, 275 N.W.2d at 266 ("[T]he word 'issue' is defined in Michigan to mean all lineal descendants."); *In re Estate of Roach*, 420 N.W.2d 847, 850 (Mich. Ct. App. 1988) (interpreting "issue" to mean lineal descendants). At the time Bookmyer executed the Trust agreement, Michigan's statutory law clearly provided the same definition. The then-effective probate code defined "issue" as "all of the person's lineal descendants of all generations, except those who are descendants of a living descendant." *See* Mich. Comp. Laws Ann. § 700.7(6) (repealed 2000).

DeClercq points out, however, that the statutory definition changed in 2000 with the enactment of Michigan's Estates and Protected Individuals Code (EPIC). EPIC defines "issue" as "an individual's descendant," and a "descendant" is defined as "all of [an individual's] descendants of all generations." Mich. Comp. Laws Ann. § 700.1103(k); § 700.1105(d). DeClercq argues that the omission of the word "lineal" from EPIC's definition of "issue" indicates that the legislature intended to expand the definition to include all relatives, both lineal and collateral. She turns to *Black's Law Dictionary* to bolster this argument, pointing out that *Black's* defines "descendant" as "[s]omeone who follows in the bloodline of an ancestor, either

-4-

lineally or collaterally." *Black's Law Dictionary* (10th ed. 2014). *Black's* also recognizes the phrase "collateral descendant" as having an 18th-century meaning, "[l]oosely, a blood relative who is not strictly a descendant, such as a niece or nephew." *Id.* In short, DeClercq asks us to not be guided by the caselaw of the forum state in defining the term "issue," but instead to look to a centuries-old, alternative definition from a secondary source.

We decline to do so. The text of Michigan's EPIC comports with the decades of caselaw establishing that one's "issue" is limited to that person's lineal descendants. DeClercq cites no authority indicating that EPIC was drafted with the intent to expand that definition. And despite *Black's Law Dictionary*'s inclusion of a 300-year-old definition of "descendant" that can extend to collateral relatives, it elsewhere defines "issue" as "[l]ineal descendants" or "offspring." *Black's Law Dictionary* (10th ed. 2014). Other legal dictionaries concur in this more limited understanding of the term. *See Issue*, The People's Law Dictionary, http://dictionary.law.com/ Default.aspx?selected=1032, (last visited Jul. 21, 2015) (defining "issue" as "a person's children or other lineal descendants such as grandchildren and great-grandchildren"); *Lawful Issue*, *Nolo's Plain-English Law Dictionary*, http://www.nolo.com/dictionary/lawful-issue-term.html (last visited Jul. 21, 2015) (equating the word "issue" with "lineal descendant"). Several lay dictionaries offer the same definition. *See Issue,* Oxford English Dictionary, www.oed.com/view/Entry/100216 (last visited Jul. 17, 2015) (defining the formal or legal usage of "issue" as "[o]ffspring, children"); *Issue,* Merriam-Webster's Dictionary, http://www.merriam-webster.com/dictionary/issue (last visited Jul. 21, 2015) (defining "issue" as one's "offspring" or "progeny").

Michigan courts have consistently defined "issue" as one's lineal descendants, both legal and lay dictionaries reinforce that definition, and Michigan's EPIC effects no change on that

point. We therefore apply it here and hold that DeClercq is not Bookmyer's "issue." DeClercq is thus not entitled to inherit under the Trust agreement.

**B. Bookmyer's gift to the ADA-MI may properly pass to the ADA**

As an alternative theory, DeClercq argues that because the ADA-MI has been absorbed into the national ADA and no longer exists as an independent entity, Bookmyer's attempted charitable bequest fails as a matter of law. But DeClercq acknowledges that the ADA-MI was merged into the ADA, not simply dissolved. Under Michigan law, the surviving entity from a corporate merger obtains all property and rights owned by each corporation that is a party to the merger. Mich. Comp. Laws Ann. § 450.2724(b) ("The title to all real estate and other property and rights owned by each corporation that is a party to the merger is vested in the surviving corporation without reversion or impairment.").

Moreover, when charitable entities have merged, courts have held that the surviving charity is entitled to receive the funds devised to a constituent entity named in a will or trust. *See, e.g.*, *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 743, 748 (Tenn. 1991) (holding that the merger of an in-state charitable institution focused on agriculture with an out-of-state charitable institution focused on healthcare would not bar the surviving corporation from inheriting funds devised to the in-state institution in a will); *In re Bodine's Trust*, 239 A.2d 315, 317-18 (Pa. 1968) (approving the bequest where the intended beneficiary of a trust—a woman's hospital—had been merged into a broader university hospital); *Conn. Children's Aid Soc'y. v. Conn. Bank & Trust Co.*, 163 A.2d 317, 319-20 (Conn. 1960) (holding that the merger of two charitable corporations would not bar the surviving corporation from receiving a benefit designated under a charitable trust for a constituent charitable entity).

We see no reason to deviate from this logic here. The ADA is therefore the proper recipient of the bequest to which the ADA-MI would have been entitled under the Trust agreement.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.